CITY OF NEW BRUNSWICK ET AL. *v.* UNITED STATES ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 260. Argued March 2, 1928.—Decided April 9, 1928.

1. Land acquired by the United States Housing Corporation under the Act of 1918 and by the Act of 1919 directed to be sold with reservation of a first lien for unpaid purchase money, was not

subject to state taxation so long as the Corporation held title as an instrumentality of the United States. P. 555.

2. Purchasers of such land, by making the payments entitling them, under their contracts with the Corporation, to receive deeds subject to their obligation to execute mortgages to secure deferred payments, became the equitable owners, and the taxability of the land, as respects the Corporation, is to be determined as if both the deeds and the mortgages had been executed. *Id.*

3. In this situation, a city where the land is, the state law permitting, may tax the purchasers upon the entire value of the land and enforce collection by selling their interests; but it cannot sell for such taxes the interest retained by the Corporation for the benefit of the United States, as security for unpaid purchase money. *Id.*

11 F. (2d) 476, reversed.

CERTIORARI, 275 U. S. 511, to a decree of the Circuit Court of Appeals, which reversed a decree of the District Court, 1 F. (2d) 741, denying an injunction to restrain sales of lots for city taxes. The suit was brought by the United States Housing Corporation, and joined in by the United States, against the city. The court below directed that the assessments for certain years be canceled and that sales for enforcement of the taxes be enjoined.

*Mr. John W. Davis,* with whom *Messrs. Thomas H. Hagerty, Russell E. Watson,* and *Edward L. Patterson* were on the brief, for petitioners.

The effect of the contracts was to render the property fully taxable by state authorities to the purchasers as soon as the purchasers became entitled to their deeds. It is a well recognized principle that one entitled to a conveyance of real estate, is in equity the real owner. *Carroll* v. *Safford,* 3 How. 441; *Green* v. *Smith,* 1 Atkyns, 572; *Farrar* v. *Earl of Winterton,* 5 Beav. 1; Bispham Equity, 7th ed., § 364, p. 534; Pomeroy, Eq. Juris., 4th ed., §§ 105, 368, 372, 1406; *Hoagland* v. *Latourette,* 2 N. J. Eq. 254; *Huffman* v. *Hummer,* 17 *Id.* 264; *King* v. *Ruckman,* 21 *Id.* 599; *Haughwout* v. *Murphy,* 22 *Id.* 531.

One with the right to receive legal title to property from the United States, and not excluded from its enjoyment, is to be treated as the beneficial owner and the land subject to taxation as his property. *Wisconsin Central R. R. Co.* v. *Price County,* 133 U. S. 496; *Wilson Cypress Co.* v. *Del Pozo y Marcos,* 236 U. S. 635; *Carroll* v. *Safford,* 3 How. 441; *Northern Pacific R. R.* v. *Patterson,* 154 U. S. 130; *Bothwell* v. *Bingham County,* 237 U. S. 642; *Kansas-Pacific Ry. Co.* v. *Prescott,* 16 Wall. 603; *Irwin* v. *Wright,* 258 U. S. 219.

It has never been suggested hitherto that the mere giving of a mortgage to an agency of the United States would be sufficient to exempt the mortgaged property from taxation. And under the law of New Jersey, the mortgagee would receive no present interest. *Blue* v. *Everett,* 56 N. J. Eq. 455.

A mere right in the United States to acquire property on the breach of a condition subsequent to the passage of title, will not exempt such property from taxation. *Railway Co.* v. *McShane,* 22 Wall. 444; *Baltimore Shipbuilding Co.* v. *Baltimore,* 195 U. S. 381.

Moreover the provisions of the contract as to the title and mortgage indicate that it was the intention of the parties that the land should be taxable.

The passage of title is the criterion of taxability. *Wisconsin Ry. Co.* v. *Price County,* 133 U. S. 496; *Irwin* v. *Wright,* 258 U. S. 219; *Bothwell* v. *Bingham County,* 237 U. S. 642; *Baltimore Shipbuilding Co.* v. *Baltimore,* 195 U. S. 375.

It was the purpose of Congress to dispose of this property as soon as possible. Full power is given by the Act to sell on the terms agreed upon, which terms are to be conclusive as to the transfer of title.

By " reserving a first lien " Congress meant that the United States should receive no more than the usual first

lien with all the incidents thereof. The first lien created by a mortgage cannot be more than a prior interest in the property at the time it is created. In certain circumstances, it may become subordinate to statutory liens such as tax liens; Cooley on Taxation, 4th ed., § 1240; or liens for certain supplies; *Virginia Development Co.* v. *Iron Co.*, 90 Va. 126; *Fidelity Ins. Co.* v. *Roanoke Iron Co.*, 81 Fed. 439; or mechanics liens; Jones on Liens, c. XXXVI. The exact effect and priority of all these depend on the various statutes in the different jurisdictions; Pomeroy Eq. Juris. 4th ed., §§ 1268, 1269; and the power to create such priority has been recognized in *Provident Institution* v. *Mayor of Jersey City*, 113 U. S. 506.

The statute itself provides that the lien shall depend on the contract and not on the statute. *United States* v. *Ansonia Brass Co.*, 218 U. S. 452.

The construction that the petitioners contend for alone achieves substantial justice. *Tucker* v. *Ferguson*, 22 Wall. 527; *Winona Land Co.* v. *Minnesota*, 159 U. S. 526.

Assuming without conceding that the United States has retained a lien that is prior to all others, the property may nevertheless be assessed to the purchasers and sold to enforce such assessment, subject always to that priority. The City's action in assessing and enforcing the taxes against the purchasers, subject to the prior lien of the United States, cannot prejudice the latter's rights in any way.

Where legal title has passed to a purchaser and where there is a right of the United States as to the property that continues to be prior to any other, taxes may be levied and enforced on the property against the purchaser, subject to that priority. *Baltimore Shipbuilding Co.* v. *Baltimore*, 195 U. S. 375; *United States* v. *Canyon County*, 232 Fed. 985; *Irwin* v. *Wright*, 258 U. S. 219; *Witherspoon* v. *Duncan*, 4 Wall. 210; *Railway Co.* v. *McShane*, 22 Wall. 444.

The wrongful refusal of the United States to convey legal title cannot be used to enable the purchasers to avoid such taxation.

Even if it be held that the land itself is exempt from both conditional and unconditional taxation to the purchasers, nevertheless it is within the power of the State to provide for the taxation of whatever equitable interest the purchasers may hold.

*Solicitor General Mitchell,* with whom *Mr. Thomas W. O'Brien,* Counsel, United States Housing Corporation, was on the brief, for respondents.

Decisions of this Court in cases where the United States held the naked legal title in trust for a purchaser, or where land in the public domain has been held immune from state taxation before the purchaser has a right to a deed, are not pertinent.

Until the full purchase price is paid, the United States has an interest in these lands for the enforcement of which certain remedies are available to it. Without regard to any other statutes or rules relating to priority, the statute authorizing sales by the Housing Corporation discloses a purpose to make the lien and rights of the United States in this land superior to those of any State or individual.

The taxes levied by the State are on the land and not on the interest of the purchaser, and the tax sales under state law, if valid, would convey the land and extinguish the lien and rights of the United States. The state law makes no provision for selling the interest of the purchaser, nor for making tax sales subject to the rights of the United States.

A decree not adjudging the taxes entirely void, but determining them inferior to the rights of the United States, and requiring the City, in making tax sales and issuing deeds, to state that they are subject to the rights of the United States, would amount to writing a new

tax law for the State of New Jersey. Taking the state tax laws as they stand, the logical conclusion may be that the taxes are void, but at least the United States is entitled to have the decree provide that its rights are superior. The matter of reaching by taxation a taxable interest as distinguished from taxing the land itself, has been dealt with in the following cases: *Northern Pacific Ry. Co.* v. *Myers,* 172 U. S. 589; *Irwin* v. *Wright,* 258 U. S. 219; *Baltimore Shipbuilding Co.* v. *Baltimore,* 195 U. S. 375.

MR. JUSTICE SANFORD delivered the opinion of the Court.

The question here relates to the validity of certain taxes assessed by the City of New Brunswick, New Jersey, upon real estate to which the United States Housing Corporation held the legal title.

The Housing Corporation was organized by authority of the President, pursuant to an Act of May, 1918,[1] for the purpose of providing housing for employees of the United States and workers engaged in industries connected with the national defense during the late war; for which an appropriation was made. The entire capital stock of the Corporation is held for and on behalf of the United States. For the purpose stated the Corporation purchased in 1918 a tract of land in New Brunswick, subdivided it into lots, and erected houses upon them.

By an amendment of July, 1919,[2] providing for winding up its affairs, the Corporation was authorized and directed to sell and convey all its property remaining undisposed of after the termination of the war, " *Provided, however,* That no sale or conveyance shall be made hereunder on credit without reserving a first lien on such property for

---

[1] 40 Stat. 550, c. 74; as amended, 40 Stat. 594, c. 92.

[2] 41 Stat. 163, 224, c. 24.

the unpaid purchase money." Pursuant thereto the Corporation entered into contracts for the sale of the New Brunswick lots to various purchasers. Each contract provided that the Corporation should sell and the purchaser should buy the property at a stipulated price, to be paid in instalments, the first on the execution of the contract, and the remainder in equal monthly payments, with interest; that after the purchaser had paid ten per cent of the purchase price the Corporation should execute and deliver a special warranty deed for the property and the purchaser should execute and deliver a note or notes with mortgage on the property to secure the balance of the purchase price in accordance with the terms of the contract; that taxes should be apportioned as of the date of the contract, and all thereafter becoming due should be paid by the purchaser, and if he failed so to do and they were paid by the Corporation, the amount thereof should be added to the purchase price; and that if the purchaser defaulted for thirty days in the performance of the terms of the contract the Corporation might retain all payments made thereon as liquidated damages, and the purchaser should be relieved from any further obligation under the contract.

The purchasers entered upon and took possession of the lots upon the execution of their respective contracts. Either then or later each paid the Corporation the entire percentage of the purchase price which entitled him under the terms of his contract to receive a deed. Nearly all of such payments were made prior to October 1, 1920. But because the City had meanwhile assessed certain taxes on these properties, which remained unpaid, the Corporation refused to execute deeds to the purchasers; and they, consequently, did not execute notes and mortgages for the balance of the purchase price.

While the Corporation thus continued to hold the legal title to the lots the City assessed them for taxation to the

purchasers for the years 1920 to 1923, inclusive. These taxes were not paid. And thereupon, to prevent threatened tax sales, the Corporation brought this suit, in which the United States joined as a plaintiff, in the federal court for New Jersey, to have the assessments cancelled and sales for the collection of the taxes enjoined. None of the purchasers were parties to this suit.[3]

The District Court held that the assessment for the year 1920 was invalid, but, being of opinion that the equitable title had passed to the purchasers under their contracts in such manner as to render the lots taxable as their property after the dates on which they had become entitled to their deeds, sustained the validity of the assessments for the year 1921 and subsequent years on all lots for which the purchasers had become entitled to deeds prior to the date of the assessment, and denied an injunction to restrain the sales. 1 F. (2d) 741. On appeal, the Circuit Court of Appeals, being of opinion that the assessment of taxes to the purchasers for 1920 and subsequent years, while the legal title to the lots was still in the Corporation, was invalid, reversed the decree of the District Court and directed it to cancel the assessment for such years[4] and enjoin the sale of the lots for the enforcement of the taxes so assessed. 11 F. (2d) 476.

The City concedes here that the assessments made to the purchasers for the year 1920 were invalid under the New Jersey law;[5] and the question before us relates only to the taxes for 1921 and subsequent years.

---

[3] Certain taxes that had been previously assessed to the Corporation itself for the years 1918 and 1919 were also challenged by the bill, but at the hearing the City conceded their invalidity, and the disposition made of them by the District Court is not here in question.

[4] Including the years 1924 to 1927, inclusive, for which taxes had meanwhile been assessed. Certain specific lots were excepted, as to which no question is raised here.

[5] This required the assessments for 1920 to be based on the ownership of the property on October 1 of the preceding year, at which time no sale contract had been made by the Corporation.

It is unquestioned that so long as the Corporation held title to the lots as an instrumentality of the United States and solely for its use and benefit, they were not subject to taxation by the City. *Clallam* v. *United States,* 263 U. S. 341, 344. But after the purchasers had made the payments entitling them to receive deeds to the lots, the Corporation ceased to hold title solely for the United States, and held partly for the purchasers, who had become the equitable owners of the property and entitled to conveyance of the title subject to their obligation to execute mortgages securing the payment of the balance of the purchase price. In equity the situation was then the same as if the Corporation had conveyed title to the purchasers, as owners, and they had mortgaged the lots to the Corporation to secure the unpaid purchase money. As between the Corporation and the City, the taxability of the lots is to be determined as if both the deeds and the mortgages had been executed; that is, as if the Corporation, while conveying the legal title to the purchasers, had retained a mortgage lien to secure the balance of the purchase price.

By the specific provision of the Act of 1919, the Corporation was not authorized to convey the property " without reserving a first lien . . for the unpaid purchase money "; and the contracts of sale could not waive, and did not purport to waive, this lien or subordinate it to taxes.

Under the provisions of the New Jersey law the taxes assessed to the purchasers, as equitable owners, rest upon the entire lots, including not only the interests of the purchasers as equitable owners, but the interest of the Corporation retained and held as security for the payment of the unpaid purchase moneys; no distinction being made under that law between the interest of the owners and that of mortgagees or lienors. We see no reason, however, if the New Jersey law permits, why the

City may not assess taxes against the purchasers upon the entire value of the lots and enforce collection thereof by sale of their interests in the property. With that the Corporation and the United States have no concern. But it is plain, under the doctrine of the *Clallam* case, that the City is without authority to enforce the collection of the taxes thus assessed against the purchasers by a sale of the interest in the lots which was retained and held by the Corporation as security for the payment of the unpaid purchase money, whether as an incident to the retention of the legal title or as a reserved lien or as a contract right to mortgages. That interest, being held by the Corporation for the benefit of the United States, is paramount to the taxing power of the State and cannot be subjected by the City to sale for taxes.

We conclude that, although the City should not be enjoined from collecting the taxes assessed to the purchasers by sales of their interests in the lots, as equitable owners, it should be enjoined from selling the lots for the collection of such taxes unless all rights, liens and interests in the lots, retained and held by the Corporation as security for the unpaid purchase moneys, are expressly excluded from such sales, and they are made, by express terms, subject to all such prior rights, liens and interests. This, we think, will meet the equities of the case as between the Corporation and the City, and fully protect the paramount right of the United States.

The decree is reversed; and the cause will be remanded to the District Court with instructions to enter a decree in accordance with this opinion.

*Decree reversed.*

MR. JUSTICE McREYNOLDS is of opinion that the District Court reached the proper conclusion and that its decree should be affirmed.