Nathan BOROCK, as Receiver of Voges Manufacturing Company, Inc., Radar Holding Corporation and Fred W. Voges, Plaintiff-Appellant,

v.

CITY OF NEW YORK, Defendant-Appellee.

No. 281, Docket 25426.

United States Court of Appeals Second Circuit.

Argued April 23, 1959.

Decided June 22, 1959.

**413**

GALSTON, District Judge.

This is an appeal by a receiver, appointed by the district court, from a judgment entered below on October 17, 1958, dismissing the receiver's action to recover certain real estate taxes paid to the City of New York during the time that the receiver was in possession of the property taxed. The non-suit was, however, without prejudice and based upon the prematurity of the action.

There appears to be no dispute as to the material facts herein; indeed the action was submitted to the court below upon an agreed statement of facts. In brief, appellant-receiver was appointed in an income tax foreclosure proceeding against one Fred Voges, individually, Voges Manufacturing Co., Inc., the Estate of Frederick Voges and Radar Holding Corporation. The receiver took possession of the taxpayers' assets on November 2, 1953. Included among the assets were a factory building and two garage buildings located in the Borough of Queens, City and State of New York, in which the Voges corporation conducted its manufacturing business as a tenant. At the time the receiver was appointed, the premises were owned by Radar Holding Corporation. It is not disputed that the government never asserted a claim for unpaid taxes against this corporation. Fred Voges was the sole stockholder of Radar Holding Corporation; he also owned fifty percent of the stock of Voges Manufacturing Co., Inc. The remaining fifty percent of said stock was owned by the Estate of Frederick Voges. The real estate taxes on the above property are the subject matter of the within appeal.

The background of the receivership and of the action brought by the receiver against the City of New York is briefly as follows:

In 1951 assessments for unpaid income taxes were filed by the government against Fred Voges, Voges Manufacturing Co., Inc. and the Estate of Frederick Voges. In November of that year Fred Voges delivered to the Collector of

Joseph Jaspan, Brooklyn, N. Y., for plaintiff-appellant.

Charles H. Tenney, Corp. Counsel, New York City (Seymour B. Quel and Benjamin Offner, New York City, of counsel), for defendant-appellee.

Before LUMBARD, Circuit Judge, and GALSTON and ANDERSON, District Judges.

Internal Revenue a stock certificate endorsed in blank, representing all the authorized and outstanding stock of Radar Holding Corporation. He also delivered a stock certificate representing his half interest in Voges Manufacturing Co., Inc.

In April of 1952, as further security of the payment of income taxes, the Collector of Internal Revenue obtained a mortgage on the property of Radar Holding Corporation in the sum of $300,000. The value of the property covered by the mortgage is concededly not in excess of that amount.

Later, in November of 1953, the government commenced an action to foreclose its tax liens. The receiver was appointed as aforesaid and the receivership has continued since with the receiver remaining in possession of the assets up to the time of this appeal.

Pursuant to a judgment entered in the government's action in April of 1955, the tax liabilities of the defendants were fixed as follows: Fred W. Voges, $155,735; Voges Manufacturing Co., Inc., $68,928; Estate of Frederick Voges, $159,911; Radar Holding Corporation was not found to owe any taxes.

None of the assets was sold to satisfy the judgment.

Pursuant to a decree of the District Court entered in November of 1956, a quit claim deed was executed and delivered to the appellant as receiver of Radar Holding Corporation, which deed was never recorded, and other plans were embodied looking to the liquidation of the tax liabilities.

Further, pursuant to the decree, in April of 1957, a first mortgage was placed against the real estate in question in the amount of $255,798.07. The net proceeds of the loan were paid to the government in full liquidation of the tax indebtedness of Fred W. Voges, and in part liquidation of the Estate of Frederick Voges, Deceased. The tax liability of Voges Manufacturing Co. was paid out of its own assets.

At the time of the obtaining of the mortgage referred to, the Collector subordinated the $300,000 mortgage which he had obtained on this property in 1952 to the lien of the new mortgage. The Collector also subordinated the government's tax liens to the lien of the new mortgage. Additionally, and in order to enable the new mortgage to be obtained, the receiver applied to the district court for instructions concerning the payment of real estate taxes against the property inasmuch as the real estate tax lien had to be discharged of record before the mortgage transaction could be consummated.

Responsive to such request for instructions, the district court, by order entered on March 6, 1957, authorized the receiver to pay the real estate tax amounting to $25,629, and such payment was made by the receiver under protest. Thereafter the receiver commenced the action against the City on June 13, 1957, which was subsequently dismissed without prejudice. It is from this dismissal that the appeal is taken.

At the outset it may be well to point out that no issue arises herein as to priority of liens as between the United States and the City of New York. The sole issue which does arise is whether the City of New York may properly impose real estate taxes on property in the possession of a receiver appointed by a federal court and acting on behalf of the United States on the application of the Commissioner of Internal Revenue.

Appellant argues in substance that the real estate involved was the property of the United States and not subject to taxation by the City of New York. The contention is made that the property is exempt from taxation pursuant to the provisions of § 4, subdivision 1, of the Tax Law of the State of New York, McKinney's Consol.Laws, c. 60, which reads as follows:

"The following property shall be exempt from taxation:

"1. Property of the United States except property subject to

taxation under the constitution and laws of the United States."

In support of its argument appellant points to the numerous indicia of ownership on behalf of the United States, including the facts set forth above; that the government holds an unrecorded deed to the property; that all of the stock of the corporate owner is held by the government and its receiver, and that the lien of the United States on the mortgage equals or exceeds the full value of the property.

Contrariwise, defendant-appellee argues that the property was at all times privately owned and subject to taxation, and that the only real issue is whether the property became exempt from taxation by the appointment of a receiver.

■■ It clearly appears that whatever indicia of ownership the United States obtained was merely by way of collateral security for the payment of income tax indebtedness. This is exemplified by the fact that the government, when it received the net proceeds of the $255,798.08 mortgage loan, subordinated its tax liens to the lien of the mortgage. At no time did the government become the owner of the real estate in a practical sense or within the meaning of the statutory exemption from state taxation of "property of the United States." Nor did the government become the owner of the property by virtue of the mortgage which it held, see Trimm v. Marsh, 54 N.Y. 599. Furthermore the government did not become the owner of the property by virtue of any lien which it may have had, and the City of New York had the right to assess taxes against the mortgagor upon the entire value of the property, see City of New Brunswick v. United States, 276 U.S. 547, 48 S.Ct. 371, 72 L.Ed. 693.

■ The real estate taxes involved here accrued during the period of the receivership. The question thus arises as to the effect of the receivership. The applicable statutes are title 28 U.S.C. § 959(b), which reads as follows:

"A trustee, receiver or manager appointed in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof. June 25, 1948, c. 646, 62 Stat. 926."

and § 960, which reads:

"Any officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation."

From the history of these proceedings as stated above, the receivership was established so that the business could be continued and so that the government could obtain payment of income taxes due it.

The predecessors of the foregoing sections, namely sections 124 and 124a of Title 28, have been construed in the case of Palmer v. Webster & Atlas Nat. Bank of Boston, 312 U.S. 156, at page 163, 61 S.Ct. 542, at page 545, 85 L.Ed. 642, where the court said:

"The legislative history of the Act discloses its purpose. The committee reports accompanying the bill which became the Act of 1934 state: 'The purpose of this bill is to subject businesses conducted under receivership in Federal court to State and local taxation the same as if such businesses were being conducted by private individuals or corporations.' The reports advert to the fact that federal courts had held a federal receiver operating a business exempt from state sales taxes. They conclude: 'No good reason is perceived why a receiver should be permitted

to operate under such an advantage as against his competitors not in receivership, and the State and local governments be deprived of this revenue.'

"What Congress intended was that a business in receivership, or conducted under court order, should be subject to the same tax liability as the owner would have been if in possession and operating the enterprise. * * * "

Likewise the foregoing sections have been construed by this court in the case of The Southern Cross, 2 Cir., 120 F.2d 466. This was an action wherein the United States sought to foreclose preferred mortgages on vessels, and sought the appointment of a receiver to operate the vessels pending the foreclosure. The question in that case was whether the receiver was exempt from the payment of New York unemployment insurance taxes, and this court held he was not. In the course of its opinion the court said, 120 F.2d at page 467:

"By virtue of federal statutes any receiver appointed by a court of the United States is subject to the same tax liability as the owner would have been had he continued in possession and operation of the enterprise."

The statute makes no distinction between receivers appointed in litigation between private parties and receivers appointed in suits by the United States. The statute does not distinguish between businesses carried on by receivers for the benefit of private litigants and businesses carried on by receivers for the benefit of the United States.

There appears to be no question here that the government could have sold the taxpayers' assets pursuant to the decree of April 11, 1955. It chose not to do so. When it chose to continue the business so that it might obtain payment of its income tax indebtedness out of the proceeds of the business, its receiver, like any receiver, remained subject to all state and local taxes. See Lyford v. State of New York, 2 Cir., 140 F.2d 840.

Accordingly the real estate taxes were properly imposed and the receiver is not entitled to any refund thereon. The dismissal below should be affirmed except that so much thereof as provides that it is without prejudice should be modified, since in no event and at no time is the receiver entitled to recover the taxes he is obligated to pay, irrespective of whether the United States is or is not paid its income tax indebtedness. Had the government chosen to exercise its privilege of foreclosing its tax lien, it could have done so. It cannot perpetuate the advantage it thus had by asserting an exemption from local taxation to which it was subject when it continued to operate the business through a receiver. Were the rule otherwise, the government might let the receivership continue indefinitely and avoid the city's real estate taxes for however long the receivership might exist, resulting in a windfall to the owner and prejudice to the City of New York.

The order is modified, and as modified, affirmed.