No. 24834

**Mesa Verde Company, a Colorado corporation v. The Board of County Commissioners of the County of Montezuma, M. W. Wolff, and his Successors, as County Assessor of the County of Montezuma, and Russell E. Hindmarsh, and his Successors, as County Treasurer of the County of Montezuma**

(495 P.2d 229)

Decided March 27, 1972. Rehearing denied April 17, 1972.

50

Calkins, Kramer, Grimshaw & Harrington, Russell P. Kramer, for plaintiff-appellant.

Zall, Zall & Henry, William A. Thompson, Jr., for defendants-appellees.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

The parties in this action appear in the same order as in the trial court. This lawsuit began when the plaintiff below, the Mesa Verde Company, filed a complaint in Montezuma County District Court seeking a refund of the ad valorem taxes which it had paid to Montezuma County from 1962-1967. The Mesa Verde Company, which is appealing from the trial court's decision, will hereinafter be referred to by name or as appellant. Defendants at the trial court, the Board of County Commissioners of Montezuma County, M. W. Wolff, County Assessor and Russell E. Hindmarsh, County Treasurer, will be referred to as appellees.

The facts are undisputed. Mesa Verde Corporation is a Colorado corporation which, as the only concessioner within Mesa Verde National Park, has provided facilities and services for public use in the Park since 1937. During the time period pertinent to this case, Mesa Verde Company's operations were conducted under two substantially identical contracts with the United States Department of Interior. Pursuant to certain conditions found in these contracts, Mesa Verde Company constructed buildings within the Park at various times to carry on its service business to the public. These structures were designated in the contracts as "Concessioner's Improvements." Since 1937 they have been assessed for ad valorem tax purposes by Montezuma County. Mesa Verde Company consistently paid these taxes under protest, claiming that the "improvements" were exempt from taxation because they were owned by the Federal Government.

Ownership interests in the improvements are described in both contracts as follows:

"It is the intention of the parties that the Concessioner shall have a possessory interest in all concessioner's improvements *consisting of all incidents of ownership, except legal title which shall be vested in the United States.* However, such possessory interest shall not be construed to include or imply authority, privilege, or right to operate or engage in any business or other activity and shall in its exercise and enjoyment, be wholly subject to the other applicable provisions of this contract and to the laws and regulations relating to the park. *The said possessory interest shall not be extinguished by the expiration or other termination of this contract, and may not be terminated or taken for public use without just compensation."* (Emphasis added.)

The contract also provides in Sec. 12(a)(1) as follows:

"(1) If for any reason, the Concessioner shall cease to be authorized to conduct the operations authorized hereunder, or any of them, and thereafter such operations are to be conducted by a successor, whether private person or any agency of the government, (1) the Concessioner will sell and transfer to the successor designated by the Secretary its possessory interest in concessioners' improvements and all other property of the Concessioner used or held for use in connection with such operations; and (2) the Secretary will require such successor, as a condition to the granting of a permit or contract to operate, to purchase from the Concessioner such possessory interest and other property, and to the Concessioner the fair value thereof. The fair value of a possessory interest shall be deemed to be *the sound value of the improvement to which it relates at the time of transfer of such possessory interest, without regard to the term of the contract.* * * *" (Emphasis added.)

In 1967, appellant filed a petition with the Board of Equalization of Montezuma County seeking a refund of taxes previously paid under protest. After considering the petition, the Board of Equalization ruled that appellant's improvements were subject to ad valorem taxation by Montezuma

County. The Board reasoned that because Mesa Verde Company (1) received compensation for those improvements that were removed or abandoned, (2) occasionally mortgaged the improvements, (3) depreciated the improvements for income tax purposes, and (4) selected the contractor for the construction of the improvements, it had "all incidents of ownership of the improvements."

On July 30, 1968, appellant then instituted the present action by filing a complaint in Montezuma District Court requesting a refund of taxes paid under protest from 1937-1967. Because certain of these claims were barred by the six-year Statute of Limitations, Mesa Verde Company conceded that its right to a refund of taxes paid should be limited to those payments made between 1962 and 1967, totalling $27,715.50. The Montezuma County District Court ruled that it must look "behind the shadow of the United States' title to the substantive ownership of plaintiff." It then found that except for freedom of alienation, plaintiff had substantially all the incidents of ownership of these improvements. The court then ordered appellant's complaint dismissed.

Mesa Verde Company appeals from this judgment and order of the trial court. Appellant argues that it is not subject to ad valorem taxation because the United States, and not Mesa Verde Company, is the owner of the improvements. We disagree with this contention and affirm the ruling of the trial court.

The only issue in this case is whether the improvements used by Mesa Verde Company within Mesa Verde National Park are subject to ad valorem taxation by Montezuma County. This issue, in turn, requires this Court to address itself to the central question presented by this appeal — Is the United States or the Mesa Verde Company the "owner" of the improvements? As we have previously stated in *City and County of Denver v. Security Life and Accident Company,* 173 Colo. 248, 477 P.2d 369, whether possessory rights can be taxed is a question of ownership. If Mesa Verde Company owns the improvements, the company is subject to

ad valorem taxation. If the United States owns the improvements it is immune from state taxation. *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316.

Whenever it is claimed that a state tax has been assessed against federal property in violation of the Government's constitutional immunity, a reviewing court must look through form and labels in order to ascertain the real ownership interest involved. *City of Detroit v. Murray Corp. of America,* 355 U.S. 489, 492, 78 S.Ct. 458, 460, 2 L.Ed.2d 441, 445; *see also Millinery Center Building Corp. v. Commissioner,* 350 U.S. 456, 76 S.Ct. 493, 100 L.Ed. 545. In this case the nature of Mesa Verde Company's ownership interest in the improvements is ascertainable from the express terms of the contracts between appellant and the Secretary of the Interior, applicable federal and state statutes, and the actions of the parties under the contracts.

The contracts entered into by appellant and the Secretary of Interior grant to Mesa Verde Company a "possessory interest in all concessioner's improvements consisting of all incidents of ownership. . . subject to the other applicable provisions of this contract and to the laws relating to the park." These other contractural provisions make clear the parties' intention to accord Mesa Verde Company a large amount of decisional authority and discretion with respect to its improvements. Subject to the prior approval of the Secretary of the Interior, the Mesa Verde Company may construct or install all improvements it deems necessary, transfer, assign, encumber, or mortgage its possessory interest in the improvements, enter into contracts for subconcession privileges, and charge the public whatever rates it decides are appropriate for the use of the improvements. More significantly, Mesa Verde Company may sell its possessory interest in the improvements to a successor designated by the Secretary of the Interior and receive thereby the "fair and sound value" of the property. The contracts further provide that while the Secretary may remove or demolish any of appellant's improvements, he must also "assure the Concessioner of compensation for its possessory interest in such

improvements in the amount of their book value." And by the terms of the contract itself, the appellant cannot be deprived of its interest in the buildings at termination of the contract without payment to him of the "sound value of the improvements." Finally, the Mesa Verde Company is required by contract to provide all necessary maintenance and repairs on the improvements, as well as absorb the loss should the improvements be accidentally destroyed.

Relevant federal and state law seem to sanction this apparent decision of the parties to vest ownership of the improvements in Mesa Verde Company, thus making appellant's buildings and structures subject to Colorado property taxes. Two statutes, 16 *U.S.C.* 117 and C.R.S. 1963, 143-1-34, deal with the cession of exclusive jurisdiction over the territory included within Mesa Verde National Park to the United States while they also "save" to Colorado "the right to tax persons and corporations, their franchises and property on the lands included in said tracts." Moreover, C.R.S. 1963, 137-1-9, expresses a legislative intent to allow taxation of properties, such as appellant's, where the "ownership. . . is qualified, limited, or not the subject of alienation."

Mesa Verde Company's ownership interest for tax purposes in its improvements is discernible not only from applicable laws and contract provisions, but also from the actions of the parties. Between 1937 and 1962, Mesa Verde Company constructed several buildings and structures for its concessioner operations. In 1963, the Secretary of Interior, acting through the Director of the National Park Service, advised Mesa Verde Company that its operations should be transferred to a different location in the National Park. The resultant move required the abandonment of improvements previously used by appellant and construction of new buildings. Through the execution of a "Bill of Sale," the Federal Government compensated appellant for its possessory interest in the buildings to be abandoned by payment of $400,000 and appellant conveyed all its "rights, title, and interest" in the buildings then used in the Park to the Government. Prior to concluding this sale, the United States

Government required appellant to pay all ad valorem taxes assessed against the improvements being abandoned. Mesa Verde Company paid these taxes, again under protest.

Appellant normally pays the entire cost of constructing its improvements and retains all profits derived from its operations. Mesa Verde Company currently employs its own architect and has contracts outstanding for the construction of additional buildings. The Federal Government is not a party to either the architect's or construction contracts. Mesa Verde Company also has mortgages on several of its improvements. Although the Federal Government, through the Secretary of the Interior, approved these mortgage agreements, it was not made a party to the transaction.

 These examples from the contracts' terms, the language of relevant statutes, and the actions of the parties while under contract lead this Court to the conclusion that there is support in the record for the trial court's finding that Mesa Verde Company is the "owner" of the improvements within the contemplation of the Colorado statutes taxing property to those who have ownership in it. Bare legal title in the United States is not conclusive evidence that the Mesa Verde Company is not "owner" of the improvements. *Offutt Housing Company v. Sarpy County,* 351 U.S. 253, 76 S.Ct. 814, 100 L.Ed. 1151. The United States Government retained bare legal title to the improvements only as security, to insure that the Mesa Verde Company, which has a monopoly on all the food, lodging, and service station facilities within the Park, would continue to provide adequate concessioner services to the visiting public. Where, as here, whatever indicia of ownership the United States possesses over property is merely by way of collateral security for performance of conditions, such property is not owned by the United States and is not exempt from taxation. *S.R.A., Inc. v. Minnesota,* 327 U.S. 558, 66 S.Ct. 749, 90 L.Ed. 851; *City of New Brunswick v. United States,* 276 U.S. 547, 48 S.Ct. 371, 72 L.Ed. 693; *Borock v. City of New York,* 268 F.2d 412 (2nd Cir.).

 Strong policy considerations underlie our decision to

allow ad valorem taxation of appellant's improvements, despite the fact that legal title is vested in the United States. After examining the ownership interest possessed by appellant, it appears that the Mesa Verde Company has full use of the improvements, as well as the right to operate these properties for private profit. In such cases, where a party has the right to possession, use, enjoyment, and profits of the property, that party should not be permitted to use the bare legal title of the Government to avoid his fair and just share of state taxation. *Northern Pacific R.R. Co. v. Patterson,* 154 U.S. 130, 14 S.Ct. 977, 38 L.Ed. 934; *Wisconsin Railroad Co. v. Price County,* 133 U.S. 496, 10 S.Ct. 341, 33 L.Ed. 687. As Justice Holmes wrote in *Baltimore Shipbuilding and D. D. Co. v. Baltimore,* 195 U.S. 375, 25 S.Ct. 50, 49 L.Ed. 242: "It would be a very harsh doctrine that would deny the right of the states to tax lands because of a mere possibility that they might lapse to the United States [for failure to fulfill certain contractural obligations]."

Here, where all the evidence indicates that the most significant incidents of ownership are possessed by appellant, it would be an especially unjust result to allow Mesa Verde Company to escape state taxation merely because the United States held legal title to insure the performance of certain contractural conditions. *Offutt Housing Co. v. Sarpy County, supra.*

After taking into consideration the above rationale, as well as the fact that there is a strong presumption in Colorado against tax exemption, *Security Life & Accident v. Heckers* 177 Colo. 455, 495 P.2d 225; *United Presbyterian Ass'n. v. Board of County Com'rs,* 167 Colo. 485, 448 P.2d 967; *Board of County Com'rs. v. Colo. Seminary,* 12 Colo. 497, 21 P. 490, we uphold the district court's decision dismissing appellant's complaint. We hold that for the purpose of taxation, Mesa Verde Company is the owner of the improvements in issue here, and as such is required to pay its share of ad valorem taxes to Montezuma County.

The judgment is affirmed.