UNITED STATES of America,
Plaintiff,

v.

SUPERMARINE, INC., et al., Defendants.

Civ. A. No. 1814-71.

United States District Court,
D. New Jersey.

June 14, 1972.

Herbert J. Stern, U. S. Atty., by James B. Smith, Asst. U. S. Atty., for plaintiff.

Riemenschneider & Krause, by Charles Krause, III, Union City, N. J., for defendants, Supermarine, Inc. and Yervant Maxudian.

George Kugler, Atty. Gen., New Jersey, for defendant, State of New Jersey.

George P. Moser, Union City, N. J., for defendant, Township of Weehawken.

E. Norman Wilson, Hoboken, N. J., by Herbert H. Fine, Red Bank, N. J., for defendant, City of Hoboken.

## OPINION

COOLAHAN, Chief Judge:

The not uncommon quest for lien priority has, at times, been a setting for the interplay of jurisprudential reasoning involving the reconciliation of the scope of authority shared by the state and federal government in their respective roles as sovereign states. The present case presents such a situation and raises issues within a framework of conflicting laws promulgated by diverse sovereigns. The facts, unlike the legal arguments involved, are not in dispute.

On March 7, 1967 Government Service Administration (G.S.A.), an agency of the United States Government, conducted a sealed bid sale of property which had previously been condemned and was, at that time, owned by the United States. The property in question is river front acreage located in the Hudson County, New Jersey municipalities of Hoboken and Weehawken. Supermarine, Inc., (Supermarine) was the low bidder. A purchase price of $500,000 was agreed upon, $100,000 to be paid in cash and $400,000 to be paid quarterly over a ten year period. G.S.A. took back a purchase money mortgage to secure Supermarine's note in the amount of $400,000. Yervant Maxudian signed the note individually and as president of Supermarine, Inc. Title closing took place on May 21, 1969 and on the following day the mortgage was duly recorded in the office of the Hudson County Register.

Supermarine, from the outset, had difficulty in making the agreed upon quarterly payments. Despite the defaults, G.S.A. granted a moratorium on principal payments from November 22, 1969 to February 21, 1971. No payments were made on the debt during this period. Consequently, G.S.A. elected, pursuant to the mortgage terms, to have the entire indebtedness become due and payable. On October 3, 1971 the United States filed a complaint in the United States District Court for the District of New Jersey, seeking the following:

Wherefore, plaintiff demands judgment:

(a) Fixing the amount due on its mortgage.

(b) Barring and foreclosing the defendants and each of them from all equity of redemption in and to said lands and premises.

(c) Directing that plaintiff be paid the amount due on its mortgage with interest and costs.

(d) Decreeing that said lands and premises be sold according to law to satisfy the amount due plaintiff.

(e) Appointing a receiver of rents, issues and profits, if necessary, of said lands and premises.

(f) For an order granting possession of the premises to the plaintiff.

(g) For a judgment on the deficiency which may result from this foreclosure action.

(h) For such further relief as the Court may deem equitable and proper.

In addition to the defaults as to interest payments, the complaint also alleges as elements of default a) permitting a policy of insurance in favor of the United States to lapse and b) failure to pay real estate taxes. Because of the possibility that local tax liens against the property may exist the State of New Jersey and the municipalities of Hoboken and Weehawken were also named as party defendants in the foreclosure suit. Seatrain, Inc., is a lessee of the property.

As anticipated by the government, both municipalities filed answers claiming liens for real estate taxes due and asserting that such liens are paramount to the mortgage lien held by G.S.A. Under the laws of the State of New Jersey taxes on real property are a lien on the

land assessed.[1] It is further provided that such lien shall be "paramount to all prior or subsequent alienations. . ."[2] if the mortgage held by G.S.A. was one held by a private individual, rather than by an agency of the United States, the laws of New Jersey would operate to make the mortgagee's lien inferior to the lien of a city for taxes. *See, e. g.* In re Lieb Bros., Inc., 150 F.Supp. 68 (D.C. N.J. 1957) aff'd 251 F.2d 305 (3rd Cir. 1958).

In the present case, the United States being the owner of the property until transfer of title on May 21, 1969, no tax could be assessed or become due on the property in question. Clallam County, Wash. v. United States, 263 U.S. 341, 44 S.Ct. 121, 68 L. Ed. 328 (1923). As of the date title was transferred to Supermarine, however, tax immunity was lost and the property could be, and in fact was, assessed. According to N.J.S.A. 54:5–6 the lien would have arisen as of January 1, 1969. Defendants contend that as a consequence their tax liens relate back to January 1, 1969, and therefore are prior in time to the mortgage lien of the United States. Again, were the concern here with a private mortgagee, the power of the legislature to make taxes a lien paramount to prior claims would be recognized and would compel the conclusion that the tax lien must prevail. Provident Institution for Savings v. Jersey City, 113 U.S. 506, 5 S.Ct. 612, 28 L.Ed. 1102 (1885). Where, however, the federal government is involved the relative priority of a United States lien is governed by federal law. This fact unfortunately provides no simple solution to the problem at hand.

In the absence of a specific statute establishing a priority in regard to a federal lien the court must apply the principles of the common law. The rule in question has been succinctly stated by Chief Justice Marshall in Rankin v. Scott, 25 U.S. (12 Wheat.) 175, 179, 6 L.Ed. 592 (1827).

"The principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction, out of the subject it binds . . . ."

Since the case of United States v. New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954) it has been settled law that this doctrine of "the first in time is the first in right" applies to determine priority between tax claims of the city and federal governments. In *New Britain* both the United States and the municipality claimed priority of payment out of a fund derived from the foreclosure of a mortgage on certain real estate. The federal lien was statutorily created. The City of New Britain based its lien claim on Connecticut laws providing that real estate tax liens and water-rent liens take precedence of all transfers and encumbrances. The Court determined that the proper procedure to follow in deciding the priority of each lien would be to consider the time each lien attached to the property and became choate. 347 U.S. at 86, 74 S.Ct. 367. This procedure would prevent an inchoate lien, uncertain as to amount, identity of the lienor or the property subject thereto, from displacing a subsequent federal lien. To provide otherwise, it was reasoned, would permit a State to "affect the standing of federal liens, contrary to the established doctrine, simply by causing an inchoate lien to attach at some arbitrary time even before the amount of the tax, assessment, etc., is determined." *Id.*

1. N.J.S.A. 54:5–6 provides:
Taxes on lands shall be a lien on the land on which they are assessed on and after the first day of January of the year for which the taxes are assessed, and all interest, penalties, and costs of collection which thereafter fall due or accrue shall be added to and become part of such lien.

2. N.J.S.A. 54:5–9 provides:
Every municipal lien shall be a first lien on such land and paramount to all prior or subsequent alienation and descents of such lands or encumbrances thereon, except subsequent municipal liens.

In deciding *New Britain,* reliance was placed on a consistent earlier case holding that a federal tax lien was prior in right to an attachment lien, described as inchoate by state law where the federal tax lien was recorded subsequent to the date of attachment but before the attaching creditor obtained judgment. United States v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950). The Court further cautioned the doctrine of relation back, which there would result in the attachment lien being merged in the judgment, would not be permitted to destroy the realities of the situation. 340 U.S. at 50, 71 S.Ct. 111.

In undertaking to reach a decision in the present case this Court has had the advantage of considering another involving a similar fact pattern, including a claim of priority under N.J.S.A. 54:5–6. United States v. Ringwood Iron Mines, 151 F.Supp. 421 (1957), aff'd 251 F.2d 145, cert. denied 356 U.S. 974, 78 S.Ct. 1138, 2 L.Ed.2d 1148 (1958). In *Ringwood* land was conveyed by the United States in August 1951 to the Ringwood Iron Mines and a note secured by a mortgage on the premises was taken back. The mortgage was duly recorded. Unpaid real estate taxes accrued for 1953 and thereafter. Default in payments continued as well and eventually on December 30, 1955 the Collector of Taxes for the Borough sold the real estate for unpaid taxes. Thereafter the government foreclosed on the property and it was sold by the United States Marshal. The Borough of Ringwood was joined as a party defendant in the foreclosure action. Stipulation was entered into between the Borough and the United States that the Borough's claim of taxes would not be cut off by the foreclosure sale. The judgment reflected this stipulation and the applicable question came before the Federal District Court for the District of New Jersey on motion to settle the judgment.

Thus *Ringwood* raised for the first time the question of whether a federal mortgage lien, rather than a federal tax lien, would be entitled to priority in a contest with a municipal tax lien. The Court, in applying the first in time first in right doctrine as enunciated in *New Britain,* found it to be broad enough to encompass a situation wherein the federal government claims priority by virtue of a mortgage lien which has become choate prior to a municipal tax assessment. Since no taxes were assessed in 1951 the question of a possible relation back of the lien to January 1st was not considered by the Court in reaching its decision.

■■ It is a contention of defendants in the instant case that N.J.S.A. 54:5–6 operates to make the lien of the municipalities relate back to January 1, 1969 and therefore is entitled to priority over the G.S.A. mortgage which became choate on May 21, 1969 as being first in time. It is axiomatic, however, that federal law does not grant permission to the states to interfere with a lien of the federal government by subsequent exercise of the taxing powers. United States v. New Brunswick, 276 U.S. 547, 555, 48 S.Ct. 371, 72 L.Ed. 693 (1927). Neither is there a requirement that state law apply to determine the priority of state liens absent a federal law making state law applicable. Admittedly, federal law controls the relative rights of an instrumentality of the federal government. Southwest Engine Company v. United States, 275 F.2d 106 (10 Cir. 1960), and where doctrines of local law are incompatible with federal law they must give way to the principles of federal law. Local 174, Teamsters etc. Local v. Lucas Flour Co., 369 U.S. 95, 102, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962).

■ Applying then, as it must, the federal common law, i. e., the "first in time" rule and the doctrine that a state cannot impair the standing of federal liens without the consent of Congress, United States v. New Britain, *supra,* this Court is compelled to find that the May 21st mortgage gave G.S.A. a choate lien on the property in question. The doctrine of relation back cannot operate

to alter the fact that the lien of the United States was first in time. The lien for municipal taxes could not have become choate until there had been an assessment of the property in order to determine the amount of the lien. Clearly, this had to occur after the transfer of the property from the United States to Supermarine.

 Defendants make a further attempt to prevail by urging that this Court find an implied consent on the part of Congress to subordinate federal non-tax liens to municipal tax liens. They find support for their position in the Federal Tax Lien Act of 1966 which amended 26 U.S.C. § 6323 so as to allow local tax liens which were choate a priority over federal tax liens. This contention has been considered and decided contrary to defendants' assertions. *See, e. g.,* H. B. Agsten & Sons, Inc. v. Huntington Trust & Savings Bank, 388 F.2d 156 (4th Cir. 1967), cert. denied 390 U. S. 1025, 88 S.Ct. 1413, 20 L.Ed.2d 282 (1968), where the Court said:

> "The 1966 Amendment . . . is simply the latest in a series designed to effect precisely limited expansions of the category of secured creditors protected from secret federal tax liens." 388 F.2d at 160.

The Court went on to note:

> "[W]e cannot say that it is illogical for Congress to deem it desirable to retain a priority for money it loans, while relinquishing the priority for its tax liens, which represent no financial outlay. Whatever may be the merits of symmetry in these two quite distinct, if cognate, areas the argument seems more properly addressed to Congress than to this court." *Id.*

For the above reasons it is the considered opinion of this Court that the United States enjoys a first lien against the real estate in question and that such lien is in the amount of $372,668 as to the principal owed (payments of $27,332 having been applied toward a reduction of the principal.)

Interest shall be computed at the contract rate of 6½% on the unpaid balance up to and including June 13, 1972 except that between the dates of November 22, 1969 and February 21, 1971 an interest rate of 8½%, as was agreed to between G.S.A. and Supermarine, shall be applied.

Summary judgment is hereby granted plaintiff on the issue of lien priority and the amount due on its mortgage. Entry of a deficiency judgment will be declined pending a sale of the mortgaged property. A receiver may be appointed if it proves necessary.

Let an appropriate order be submitted.