The CITY OF NEW YORK, Plaintiff.

v.

UNITED STATES of America, Defendant.

No. 74-C-929.

United States District Court,
E. D. New York.

Feb. 26, 1975.

Adrian P. Burke, Corp. Counsel, New York City, for plaintiff by Judah Dick, Asst. Corp. Counsel, New York City, of counsel.

David G. Trager, U. S. Atty., Brooklyn, N. Y., for United States by Joel Wachs, Asst. U. S. Atty., New York City, of counsel.

JUDD, District Judge.

MEMORANDUM AND ORDER

This is an action to quiet title, which was removed from the Supreme Court, Kings County, under 28 U.S.C. § 1444. Plaintiff has moved for summary judgment.

*The Complaint*

Plaintiff asserts in their complaint that 266 Siegel Street Realty Corporation acquired title to a lot 100 feet by 28.5 feet on Siegel Street, Brooklyn, on December 5, 1960; and that it defaulted in real estate taxes from the second half of 1960–61, and in water and sewer charges from the calendar year 1961. An *in rem* foreclosure action was begun on September 27, 1966 with respect to taxes accruing prior to July 1, 1965, and resulted in a default judgment which was implemented by a deed from the Director of Finance to the City of New York on May 8, 1967. The United States was not made a party to this foreclosure.

A mortgage of $14,800 had been made to Chase Manhattan Bank on April 4, 1961, and recorded on April 17, 1961. It was assigned to the United States on September 30, 1965, after payments were in default. The assignment was recorded on February

11, 1966, before the City began its *in rem* foreclosure.

The City asserts that all taxes and sewer and water charges are prior in lien to the mortgage under New York City Administrative Code, § 415(1)–7.0. It asserts that the land is now vacant and that it was worth less than the taxes (some $5,000) for which it was sold.

The City also asserts that the statute of limitations has run on the mortgage because no payments were made after September 30, 1965.

### The Answer

The answer admits the making of the mortgage and the assignment and that mortgage payments have not been made, but denies information and belief about most of the other allegations of the complaint. The United States asserts by way of counterclaim that the mortgage is in default and asks that it be foreclosed. The counterclaim recites that the government may have to pay taxes and water charges on the property, and asks that they be added to the sum due on the mortgage.

### Other Facts from the Motion Papers

The City's motion papers show that Chase Manhattan obtained judgment for $12,-026.87 on the mortgage note in the Supreme Court, New York County, on March 20, 1964; that Chase Manhattan did not foreclose the mortgage; and that it assigned the bond and mortgage and the judgment to the United States of America pursuant to a guarantee by the Federal Housing Administration (FHA) made when the mortgage was initially executed.

The City brought an action in the Supreme Court, Kings County, in 1973 to quiet title against the judgment lien which the United States held. Judgment quieting title was granted on September 20, 1973, without objection by the United States, but with a *caveat* written into the typewritten form. With reference to the injunction against the United States' asserting any claim under its judgment lien, the insert read, "except that it shall retain its rights as provided by the statutes of the United States of America." The title company notified the City when it was about to sell the property that the United States' mortgage must still be removed as a lien.

The City asserts that the sale at the *in rem* foreclosure brought less than the amount of the tax liens on the properties which were foreclosed. There are therefore no surplus moneys to satisfy the Chase Manhattan mortgage if it does not have priority.

There is no evidence that the FHA guarantee was a matter of record. Neither side has included the mortgage among its papers.

The Administrative Code provides that an owner or mortgagee of property may file a notice with the Director of Finance stating his name and address, that such a notice is valid for a two-year period, and that when a notice of foreclosure of tax liens is published, the Finance Administrator shall mail a copy of the notice to each owner and mortgagee shown on his records. There is no evidence that the United States ever filed such a notice with the City Director of Finance.

### Discussion

The government relies on its statutory priority under 31 U.S.C. § 191, which states:

> Whenever any person indebted to the United States is insolvent . . . the debts due to the United States shall be first satisfied . . . .

Priority of a mortgage over local real estate taxes was recognized by the Court of Appeals for this circuit in *United States v. General Douglas MacArthur, Senior Village, Inc.,* 470 F.2d 675 (2d Cir.), *cert. denied,* 412 U.S. 922, 93 S.Ct. 2732, 37 L.Ed.2d 149 (1973). The *MacArthur* case was not precisely parallel. It involved a loan of $1,770,000 directly from the Department of Housing and Urban Development (HUD) to the defendant. The mortgage was recorded in 1966; thereafter in 1968 the corporation ceased paying county, town and village real property taxes; and the United States com-

menced a federal court foreclosure action in 1971. Under those circumstances the Court of Appeals held that "The federal mortgage lien, having been recorded in 1966, would be superior to property tax liens arising in 1968 and succeeding years." 470 F.2d at 678.

A mortgage lien held by a federally owned corporation was given priority over real estate taxes in *City of New Brunswick v. United States,* 276 U.S. 547, 48 S.Ct. 371, 72 L.Ed. 693 (1928), because the court held (276 U.S. at 556, 48 S.Ct. at 373, 72 L.Ed. at 698):

> That interest, being held by the Corporation for the benefit of the United States, is paramount to the taxing power of the State and cannot be subjected by the City to sale for taxes.

That case related to a purchase money mortgage held from its inception by the United States Housing Corporation, and not to a mortgage made by a private lender and insured by a federal agency and assigned to the agency after the tax default.

▮ The loan here was made by Chase Manhattan Bank and not by HUD. The government argues that a loan guaranteed by the FHA amounts to a government loan because its terms must be satisfactory to the FHA. This is a *non sequitur.* Until the mortgage was assigned to the United States in 1965, there was no debt due to the United States. At that time the property was already subject to the tax liens for which it was ultimately sold.

▮ There is no support for federal priority over existing real estate tax liens in the second *MacArthur* case, 508 F.2d 377 (2d Cir. 1974), which the government cites. That case merely held that the County of Nassau had not warranted the priority of its tax lien and that the purchaser of the tax lien, who failed to make a title search, could not be reimbursed for the purchase price of the liens.

Priority to preexisting claims was denied in *United States v. Marxen,* 307 U.S. 200, 59 S.Ct. 811, 83 L.Ed. 1222 (1939), where a mortgage insured by the FHA was not as-

signed to the United States until after the mortgagor had been adjudicated a bankrupt. The Supreme Court held that the maker of the mortgage was not connected with the insurance even though he gave a credit statement to the bank for purposes of the National Housing Act and that, since priority was fixed at the time of the filing of the bankruptcy petition, a subsequent assignment to the United States did not give it priority. The *Marxen* case dealt with the priority of the United States under both the predecessor of Section 191 and Section 64(b)(7) of the Bankruptcy Act. On similar principles, the United States has been denied priority in decedent's estates for installments on an FHA guaranteed loan which fell due after the date of death. *In re Woods Estate,* 171 Misc. 542, 12 N.Y. S.2d 816 (Surr.Ct., Orange Co. 1939); *Matter of Buyam,* 12 N.Y.S.2d 501 (Sup.Ct., Kings Co. 1939). An FHA-insured mortgage does not create a "debt due to the United States" until it has been assigned to the United States. *Bulls v. United States,* 356 F.2d 619, 623 (5th Cir. 1966).

The principle of "first in time, first in right," was applied to federal tax liens in *United States v. City of New Britain,* 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954), where funds resulting from the foreclosure of a private mortgage were subject to city real estate tax liens dating from 1947, and federal withholding and unemployment tax liens dating from 1948. The court ruled (347 U.S. at 86, 74 S.Ct. at 370, 98 L.Ed. at 526), that

> [T]he priority of each statutory lien contested here must depend on the time it attached to the property in question and became choate.

Since the United States was not a lender here, it did not acquire its lien until the time of the assignment in 1965. There is a distinction between the United States as lender and the United States as assignee.

A due process claim was raised by the United States because it was not notified of the *in rem* foreclosure proceeding. *Cf. Mullane v. Central Hanover Bank,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). It is not

necessary to pass on that claim, since the discussion above shows that the United States would not have had a defense to the foreclosure, even if it had received notice.

The government's counterclaim for foreclosure of its mortgage is also without merit, since there is no showing of any equity above the amount of the taxes that were entitled to priority.

Plaintiff moved for a default judgment as well as for summary judgment. The motion for default judgment was primarily a make-weight, and does not have sufficient merit to justify any comment.

IT IS ORDERED that plaintiff's motion for summary judgment be granted, that the counterclaim in defendant's answer be dismissed, and that judgment be entered as prayed by the plaintiff.

Settle judgment on three days' notice.