**SOUTHERN CAFETERIA, INC.,**
Petitioner-Appellee,

v.

**PROPERTY TAX ADMINISTRATOR,**
**and Board of Assessment Appeals,**
Respondents-Appellants.

**No. 82CA0506.**

Colorado Court of Appeals,
Div. II.

July 14, 1983.

Rehearing Denied Aug. 11, 1983.

Certiorari Denied Jan. 23, 1984.

Frank M. Cavanaugh, Evergreen, for petitioner-appellee.

J.D. MacFarlane, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Billy Shuman, Asst. Atty. Gen., Denver, for respondents-appellants.

KELLY, Judge.

Respondents, Property Tax Administrator and Board of Assessment Appeals, appeal a judgment in favor of the petitioner, Southern Cafeteria, finding the cafeteria entitled to a refund of property taxes wrongfully levied and collected. Respondents contend that the taxpayer failed to exhaust available administrative remedies in a timely manner, thereby precluding district court jurisdiction over the subject matter of the dispute, and that the taxpayer failed to sustain its burden of proving the illegality of the tax. We affirm.

The taxpayer is a concessionaire operating a food service at the Denver Federal Center under a standard General Services Administration contract. Under the contract, the federal government provides essentially all of the equipment necessary for the operation, and the fixtures and real property used by the taxpayer in the course of its operation are government owned. The federal government also monitors the pricing structure and fixes the taxpayer's profit.

The County Assessor for Jefferson County assessed the taxpayer $11,651.02 in taxes for the year 1976 pursuant to § 39–3–112(1), C.R.S.1973, which at that time provided that:

> "When any property ... exempt from taxation is leased, loaned, or otherwise made available to and used by a ... corporation in connection with a business conducted for profit, the lessee or user shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property."

In 1978, the taxpayer filed a petition for refund, which was approved by the Board of County Commissioners in 1980. On review of that body's action, the Administrator denied the petition. The taxpayer then appealed to the Board of Assessment Appeals which affirmed the action of the Administrator. This action in the district court resulting in a decision favorable to the taxpayer has been appealed to this court by the respondents Administrator and Board.

I.

Respondents contend that the district court lacked subject matter jurisdiction because the taxpayer failed to exhaust its

administrative remedies in a timely manner. We disagree.

■ At issue here are conflicting interpretations concerning the applicability of two statutory sections. Respondents argue that § 39–5–122, C.R.S.1973, which requires that a protest be filed in June of the current tax year, applies in this case. Section 39–5–122, however, applies to objections and protests concerning valuations of, and assessments on, real property prior to payment of the tax, and is not applicable where, as here, the tax levied and collected is itself illegal. *Lamm v. Barber*, 192 Colo. 511, 524, 565 P.2d 538 (1977); *see Modular Communities, Inc. v. McKnight*, 191 Colo. 101, 550 P.2d 866 (1976); *Laredo Housing Apartments, Ltd. v. Board of County Commissioners*, 628 P.2d 135 (Colo.App.1980) (holding § 39–5–122 generally applicable in cases of "overassessment" or "original assessment").

The district court applied § 39–1–113, C.R.S.1973, which, at the times pertinent here, stated:

"No abatement or refund of taxes erroneously or illegally levied shall be made by the board of county commissioners unless a hearing is held thereon, at which hearing the assessor shall have the opportunity to be present. Whenever any abatement or refund is recommended by the board of county commissioners, an application therefor reciting the amount of the abatement or refund and the grounds upon which it should be allowed, shall be submitted to the administrator. No abatement or refund of taxes shall be made except upon the approval of the administrator, endorsed upon the application."

Although § 39–1–113 was amended effective January 1, 1982, and now permits refunds up to six years after the taxes are due, the prior procedure in § 39–1–113, which applies here, unlike that in § 39–5–122, contained no time constraints as to when a petition for refund must be filed with the Board of County Commissioners. We agree with the district court and hold that § 39–1–113 is the applicable statutory section.

■ Since § 39–1–113 is the applicable section, the administrative remedies contained in that section and in § 39–10–114 must be exhausted. *Denver v. Athmar Park Building Co.*, 151 Colo. 424, 378 P.2d 638 (1963); *Davison v. Board of County Commissioners*, 41 Colo.App. 344, 585 P.2d 315 (1978). Here, the taxpayer properly and timely petitioned the Board of County Commissioners, and, after the Administrator refused to approve the refund, the taxpayer petitioned the Board. The district court found that there had been compliance with all procedural requirements set out in § 39–1–113, and we agree.

## II.

Respondents next argue that the taxpayer failed to carry the burden of establishing the illegality of the tax assessment. We disagree.

Respondents' numerous arguments all center around the question of the legality of the tax imposed. The district court based its ruling on *United States v. State of Colorado*, 627 F.2d 217 (10th Cir.1980) (the *Rockwell* case). Respondents argue the inapplicability of the *Rockwell* case primarily on the ground that the taxpayer here operated cafeterias and snack bars for a profit. Instead, they urge the application of the ruling in *Mesa Verde Co. v. Board of County Commissioners*, 178 Colo. 49, 495 P.2d 229 (1972). We find the *Rockwell* case to be controlling and are persuaded that the *Mesa Verde* holding is inapposite.

In the *Rockwell* case, Rockwell International Corporation contracted with the federal government to operate and manage the Rocky Flats nuclear plant. The federal government provided all the funds necessary to operate the plant, owned all tangible personal property used in the operation of the plant, and owned all of the real property used in the production process. Rockwell's only obligation was to operate and manage the plant, for which it received a fixed fee of more than five million dollars between 1975 and 1977. Because Rockwell

bore none of the costs, the fixed fee was considered profit from the operation.

We see no distinction between paying Rockwell a fixed profit and fixing a ceiling on Southern Cafeteria's profits on its own operation. Both Rockwell and the taxpayer here operated a profit-making business pursuant to contracts with the federal government, on real property owned by the government. The United States District Court in the *Rockwell* case, *United States v. Colorado,* 460 F.Supp. 1184 (D.Colo. 1978), *aff'd,* 627 F.2d 217 (10th Cir.1980), held that the tax assessment failed to identify or separate the government's ownership interest from Rockwell's beneficial use of the property, and by thus failing to limit the tax to Rockwell's interest, the tax amounted to nothing less "than a general ad valorem property tax imposed on United States property." The tax was on the property itself rather than on Rockwell's beneficial use of it. *See United States v. Allegheny County,* 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944).

■ Based on the contract, the district court here found that the taxpayer had no "incidents of ownership over the government property in the year 1976." The evidence supports this finding. The government maintained control over the amount of profit taxpayer could realize, reserved the right to use the property when not being used by the taxpayer, and maintained and repaired the building structures used. Further, the taxpayer had no lease or permit to the property, the contract being terminable by either party on sixty days' notice.

■ Contrary to the respondents' argument, this case is distinguishable from *Mesa Verde Co. v. Board of County Commissioners, supra.* There, the concessionaire's structural improvements were held taxable inasmuch as the taxpayer was able to depreciate them for income tax purposes, mortgage them, receive compensation for them upon discontinuance of the contract, and select the contractor to build them. Our Supreme Court concluded that the taxpayer had "all incidents of owner-

ship of the improvements." Here, no such incidents of ownership are present sufficient to bring this case within the holding of *Mesa Verde.* We find respondents' other cases to be inapposite for the same reason.

The judgment is affirmed.

PIERCE and TURSI, JJ., concur.