MARKET NATIONAL BANK *vs.* INHABITANTS OF BELMONT
& others.

Middlesex. March 19. — June 28, 1884. DEVENS & COLBURN, JJ., absent.

The St. of 1880, c. 204, set off a part of the town of B. and annexed it to the city of C.; and provided, in § 2, that "the inhabitants and estates within the territory hereby set off and the owners of such estates shall be holden to pay all taxes assessed and in arrears to the same persons, and such taxes may be collected in the same manner as if this act had not been passed." *Held*, that the assessors of B. could reassess a tax, originally assessed to the wrong person, for a year *previously to the passage* of the statute, to the owner of land included in that so set off.

An entry upon land by a mortgagee, for the purpose of foreclosing his mortgage, between the date of an assessment of a tax upon the land and the date of a reassessment of the same tax, the original tax having been assessed to the wrong person, is not an alienation of the land between the first and second assessments, within the meaning of the Pub. Sts. c. 12, § 25.

BILL IN EQUITY, filed January 26, 1883, to remove a cloud upon the title to a parcel of land in Cambridge. At the hearing, the bill was dismissed, with costs; and the plaintiff appealed to the full court. The facts appear in the opinion.

*M. M. Weston*, for the plaintiff.

*C. A. Welch*, for the defendant town.

MORTON, C. J. The assessors of Belmont assessed the taxes upon the land in question, for the years 1876 and 1877, to Jacob Hittinger. These assessments were illegal, because Hittinger was not the owner of the land. *Miner* v. *Pingree*, 110 Mass. 47. As each tax was invalid by reason of this error and irregularity, it was within the power of the assessors of Belmont to reassess it "to the just amount to which, and upon the estate and to the person to whom, such tax ought at first to have been assessed." Gen. Sts. c. 11, § 53. Pub. Sts. c. 11, § 79. And taxes thus reassessed constitute a lien upon the real estate for two years after they are committed to the collector, and can be levied by a sale of the estate, "unless the estate has been alienated between the first and second assessments." Gen. Sts. c. 12, §§ 22, 23. Pub. Sts. c. 12, §§ 24, 25. Acting under these statutes, the assessors of Belmont, in March, 1881, reassessed the taxes for the years 1876 and 1877 to Whitmore and Smith, who were the owners in those years, and the persons

to whom such taxes ought first to have been assessed; and afterwards the collector duly sold the land for the non-payment of the reassessed taxes to the town of Belmont, and conveyed it to said town.

The plaintiff contends that the title thus acquired by the town is invalid, for two reasons: first, because, at the time of the reassessment, the land in question was within the limits of Cambridge, and not in Belmont; and, second, because there had been an alienation of the land between the two assessments.

1. By the St. of 1880, c. 204, a part of the town of Belmont, which included the land in question, was set off from Belmont and annexed to the city of Cambridge. But § 2 of the statute provides that " the inhabitants and estates within the territory hereby set off and the owners of such estates shall be holden to pay all taxes assessed and in arrears to the same persons, and such taxes may be collected in the same manner as if this act had not been passed."

The object of the Legislature was to prevent the passage of this statute from impairing the right of Belmont to enforce and collect its taxes laid in previous years. A reassessed tax is not, strictly speaking, a new tax. It is a part of the tax of the year in which it is first assessed : it must be based upon the valuation of that year, and must be laid under the original votes of the town and the warrants of the State and county fixing the tax for that year.

The power of reassessment is given to a town to enable it, not to create a new tax, but to correct and cure any error or irregularity in the original assessment. When the Legislature provided that the estates set off to Cambridge should be holden to pay all taxes assessed and in arrears for previous years to Belmont, we think it intended to preserve to Belmont the right to enforce its taxes for previous years by any legal methods, including reassessment if necessary. This is in accordance with the spirit of the statute, and is not inconsistent with its letter.

We are therefore of opinion that the transfer of the land in question to Cambridge did not defeat or affect the right of the assessors of Belmont to reassess the taxes of the years 1876 and 1877.

2. In 1876 and 1877, Whitmore and Smith were the owners in fee of the land, subject to a mortgage to the Fitchburg Railroad Company.

In October, 1879, the mortgagee entered under the statute to foreclose its mortgage, and it and its assignees have since continued in possession, taking the rents and profits. The plaintiff contends that this worked an alienation "between the first and second assessments," so that the reassessed taxes did not constitute a lien on the land. To alienate is to transfer or convey the title. An entry to foreclose does not do this. What might be the effect of a completed foreclosure we are not called upon to consider. A mere entry to foreclose in some respects changes the relations of the parties: it gives the mortgagee possession; as a rule of convenience in assessing taxes, the mortgagee after entry is deemed to be the owner for purposes of taxation, it is one step in a proceeding which may result in an alienation, by operation of law, of the equity of redemption which the mortgagor had at the time the tax was assessed; but such equity remains in the mortgagor after the entry. Such entry cannot, in any just sense, be called an alienation of the estate, within the meaning of the statute, so as to defeat the right of the town to correct an error in its first assessment, and reassess a tax for which the estate is justly liable.          *Bill dismissed.*