CITY OF WORCESTER *vs.* EDWARD L. BENNETT, trustee.

Worcester.    September 23, 1941. — December 29, 1941.

Present: FIELD, C.J., QUA, DOLAN, COX, & RONAN, JJ.

*Tax,* On real estate: lien, sale, reassessment. *Statute,* Construction. *Mortgage,* Of real estate: foreclosure, trust mortgage. *Trust,* Express: construction; Authority of one of several trustees.

St. 1934, c. 169, amending G. L. (Ter. Ed.) c. 60, § 37, did not apply retroactively to a reassessment, made after its effective date, of a tax, originally assessed before that date, upon land alienated between the times of the two assessments.

Under G. L. (Ter. Ed.) c. 59, § 77; c. 60, § 37, there was no lien upon certain real estate for a tax reassessed more than two years after commitment to the collector of the tax originally assessed and after an alienation of the property; and a tax title purported to have been acquired for nonpayment of the reassessed tax was of no effect.

A foreclosure of a mortgage of real estate by entry and three years' possession in accordance with G. L. (Ter. Ed.) c. 244, §§ 1, 2, was an alienation of the property within c. 59, § 77; c. 60, § 37.

Under the provisions of an elaborate "mortgage indenture" of real estate running to a corporation and an individual as trustees, including a provision that upon default by the mortgagor the trustees "or either of them" might foreclose the mortgage "by any appropriate remedy," the individual trustee, acting alone, could foreclose by entry followed by three years' possession under G. L. (Ter. Ed.) c. 244, §§ 1, 2, although in the mortgage the power of foreclosure by sale was expressly vested exclusively in the corporate trustee and it refused to "join in," did not ratify and "neither approved nor disapproved" such entry.

PETITION, filed in the Land Court on September 3, 1937. The case was heard by *Fenton,* J.

*P. Fletcher*, for the respondent.

*A. M. Hillman*, Assistant City Solicitor, (*W. D. Allen*, City Solicitor, with him,) for the petitioner.

QUA, J.    This is a petition under G. L. (Ter. Ed.) c. 60, § 65, as amended, to foreclose all rights of redemption in certain real estate in Worcester from a tax title alleged to have been acquired by the city in 1935 for nonpayment of the taxes originally assessed in 1928 to Y–D Service Garage of Worcester, Inc., hereinafter called the company, and reassessed on December 18, 1934, after a tax title acquired by the city under the original assessment had been held invalid in the Land Court "because of error in the description in the assessment, notice and tax deed."    Edward L. Bennett as one of two trustees under a "Refunding Mortgage Indenture" covering the property has filed a bill of exceptions and has also appealed from a decision of the Land Court wherein a decree for the petitioner was ordered. No offer to redeem from the tax title has been made.

At the threshold of the case lies the question whether before the sale in 1935 the city had been deprived of its tax lien by an alienation of the land resulting from an entry under the mortgage indenture on July 1, 1929, and three years' possession thereafter.    "The right to sell land for taxes rests solely upon the existence of such lien, which is a creature of statute and not originally a feature of the collection of taxes in this Commonwealth."    *Shruhan* v. *Revere*, 298 Mass. 12, 14.    If it had no lien the city acquired no tax title which it can now foreclose.    *Morse* v. *Revere*, 248 Mass. 569.

When the original assessment was made in 1928 what is now G. L. (Ter. Ed.) c. 60, § 37, was in force and continued in force without amendment until after July 1, 1932, when the three years from the date of entry expired.    This section provided in part as follows: "Taxes assessed upon land . . . shall . . . be a lien thereon from April first in the year of assessment.    Such lien shall terminate at the expiration of two years from October first in said year, if the estate has in the meantime been alienated and the instrument alienating the same has been recorded, otherwise

it shall continue until a recorded alienation thereof; . . . There shall be no lien for taxes reassessed if the property is alienated before the reassessment." It was also provided by c. 59, § 77, relating to reassessments, that "An alienation of the real estate assessed shall not defeat a reassessment, if made within two years after the tax first assessed was committed to the collector; but the lien provided by section thirty-seven of chapter sixty shall terminate as therein provided." The reassessment in this case was not made within the two years, but was made about six years after the tax first assessed must have been committed to the collector. It is true that before the reassessment was made c. 60, § 37, had been amended by St. 1934, c. 169, and that the sentence "There shall be no lien for taxes reassessed if the property is alienated before the reassessment" does not appear in the amended section. But the provision of c. 59, § 77, that an alienation shall not defeat a reassessment, if made within two years after the tax first assessed was committed to the collector, remained. We do not consider the effect in general of the 1934 amendment upon liens for reassessed taxes, since we are of opinion that if that amendment in any way broadens the effect of reassessment upon lands that have been alienated it should not be construed retroactively to apply to reassessments made after it took effect of taxes originally assessed before its enactment. See *Hanscom* v. *Malden & Melrose Gas Light Co.* 220 Mass. 1. A very similar question in relation to reassessments of betterments was decided in *Union Street Railway* v. *Mayor of New Bedford,* 253 Mass. 314, 317, where it was said that betterment assessments are in "legal character, a tax," citing *President & Fellows of Harvard College* v. *Aldermen of Boston,* 104 Mass. 470, 482. The New Bedford case is authority here to the effect that the respondent's rights are to be determined under the law as it stood before the 1934 amendment. We need not consider whether before that amendment there was any inconsistency in the two sections from which we have quoted, since upon any reasonable construction of these sections it seems to result that there could be no lien for the taxes

reassessed more than two years after the original commitment if the property had been alienated before the reassessment. See the corresponding provisions of G. L. (Ter. Ed.) c. 80, § 16, relating to reassessments of betterments. This is true whether or not the completed alienation can be said to have been recorded. The provisions of § 37 relative to recording are applicable in fixing the duration of the lien once it arises. They have never been made applicable in determining whether a lien is created by a reassessment upon alienated land. St. 1859, c. 118, § 2. Gen. Sts. c. 12, § 23. St. 1881, c. 304, § 7. Pub. Sts. c. 11, § 79; c. 12, § 25. St. 1888, c. 390, § 31. R. L. c. 13, § 35. St. 1909, c. 490, Part I, § 86; Part II, § 36. St. 1915, c. 237, § 17. St. 1918, c. 257, § 46.

We are of opinion that there had been a completed alienation of the land before the reassessment. On July 1, 1929, Bennett as "individual trustee" under the mortgage indenture, upon which the company as mortgagor was then in default, entered upon the premises and thereafter duly recorded and registered (part of the premises being registered land) a certificate of entry in accordance with G. L. (Ter. Ed.) c. 244, §§ 1, 2, wherein it is stated that he, "'Individual Trustee' under" the indenture, entered "for the purpose by him declared of taking possession of the mortgaged property and premises and managing working and conducting the business of the Company and of foreclosing the mortgage for breach of the condition thereof." The other trustee under the indenture, whose corporate name was then Worcester Bank and Trust Company, and which is called in the indenture the "corporate trustee," "refused to join in" and "has not ratified" the entry and has thereafter, in acknowledging receipt of the notice required by the indenture, "stated that it neither approved nor disapproved" of the entry. Before the entry Bennett had discussed with the bank's trust officer and its attorney the action to be taken and "the manner in which it was to be taken," and as a result of this discussion "it was decided that the corporate trustee did not wish to join Bennett, individual trustee, in taking possession of the property."

The bank's attorney, however, assisted in preparing the "necessary instruments." After the entry Bennett as individual trustee remained in possession. It may be assumed in the absence of anything to the contrary that his possession was sufficiently peaceful to satisfy the more or less fictional requirement of the statute. See *Bennett* v. *Conant*, 10 Cush. 163, 166, 167; *Fletcher* v. *Cary*, 103 Mass. 475; *Long* v. *Richards*, 170 Mass. 120, 127–129. The certificate was conclusive of Bennett's intent to foreclose. See *Hawkes* v. *Brigham*, 16 Gray, 561, 564, 565. The three years expired July 1, 1932, before the reassessment. The foreclosure of a mortgage by sale is an alienation of the land within the meaning of the statutes here under consideration. *Davis* v. *Boston*, 129 Mass. 377, 379. See *Abbott* v. *Frost*, 185 Mass. 398. A mere entry to foreclose, without the lapse of the necessary three years, was held not an alienation in *Market National Bank* v. *Belmont*, 137 Mass. 407, but language was used which seems to us to imply strongly that the court would have regarded the alienation as complete if the entry had ripened into a foreclosure by the lapse of three years. We cannot doubt that this would be so, and that an alienation within the meaning of the statutes involved is here shown, if the entry by the individual trustee Bennett alone, without actual participation by his cotrustee, was a lawful and sufficient entry for the purpose of foreclosing the mortgage indenture.

We are thus brought to the point of principal difficulty in the case upon which it becomes necessary to look into the provisions of the mortgage indenture itself.

This is an elaborate document of sixty-five printed pages obviously intended to cover all questions likely to arise among the company as mortgagor, the trustees as mortgagees and the numerous holders of the series of notes which the mortgage was given to secure. It is dated July 1, 1925. The granting clause and the habendum run to the trustees and their successors and assigns. The primary covenant from the company to the trustees that it will pay the secured notes according to their tenor and will perform the obligation of any prior mortgage runs to "the Trustees

and their successors in trust, jointly and severally." The powers of the individual trustee and of the corporate trustee are not in all respects the same. Certain matters such as certification of the notes and custody and application of the sinking fund are committed to the corporate trustee alone and in some respects its powers are more extensive than those of the individual trustee. But in general, while it is obvious that the trustees may act together if they so desire, yet the instrument confers upon each authority to exercise the trust powers alone. Throughout the instrument the words "the Trustees or either of them" are constantly used in defining the trust powers and duties. It is provided that "the Trustees, or either of them, in their or either of their own names" may prosecute proceedings at law or in equity to enforce payment of the notes (art. X, § 1); that if the individual trustee desires to take action severally he shall notify the corporate trustee of action taken or to be taken and in specified instances shall record a statement of his proposed action as his several and sole action, and thereafter his action shall be construed to be the several and sole action of the individual trustee and shall "be as valid and of equal force and effect as if joined in by both Trustees" (art. XII, § 11); and that either trustee shall be fully protected "in any action taken by it alone," pursuant to the provisions of the indenture (art. XII, § 2). The "Provisions in Case of Default" by the company contained in art. VI are of particular significance. In the event of such default the trustees, or either of them, may enter and take possession and conduct the business of the company for the benefit of the note holders or, either after such entry or without entry, may "proceed by suit or suits at law or in equity or by any appropriate remedy, as the Trustee or Trustees so proceeding may be advised, to enforce payment of the said notes, . . . and to foreclose this mortgage and to sell the plant, lands, premises, appurtenances, and property . . . under the judgment or decree of a court or courts of competent jurisdiction . . ." In addition to this provision the corporate trustee alone is given a power of sale. (Art. VI, § 1.) Except as expressly

provided, no remedy conferred upon or reserved to the trustees or either of them "is intended to be exclusive of any other remedy, but each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute; nor shall the adoption of any such remedy, whether herein provided or otherwise existing or deemed to exist, operate by way of election or to exclude the Trustees or either of them from having recourse to any other remedy . . ." (Art. VI, § 5.)

We think it was the purpose of these provisions to grant and to preserve to either trustee all methods of foreclosure known to the law, except that the corporate trustee alone could exercise the power of sale. Foreclosure by entry and recorded certificate is still an "appropriate remedy" to foreclose a mortgage, and it is also a "remedy . . . existing . . . by statute." G. L. (Ter. Ed.) c. 244, §§ 1, 2. Its exercise does not encroach upon the power of sale given exclusively to the corporate trustee. It must be conceded that the language of the indenture is not wholly apt in respect to foreclosure by entry and certificate as practised in this Commonwealth. That process may not have been fully in the mind of the original draftsman. Nevertheless, taking the indenture as a whole, we think it easier to construe it as designed to include this method of foreclosure among others as available to each trustee than it would be to construe it as excluding this method. We must conclude that this form of foreclosure was within the powers conferred by the instrument upon the individual trustee to be exercised by him alone, if the corporate trustee did not see fit to join him.

We are further of opinion that the entry made by the individual trustee, although in a sense his sole act performed of his own election, must be deemed to have been made in behalf of the entire title held in trust and of both trustees and to have resulted in a foreclosure of the entire mortgage, even though the corporate trustee did not itself actually enter or later ratify the act of the individual trustee in making the entry. The findings of the judge hereinbefore men-

tioned in respect to these matters must be read in the light of the mortgage indenture. By that instrument, upon our interpretation of it, the company and both trustees and all parties interested in the mortgage bound themselves and the mortgaged estate, in so far as they legally could, to the complete efficacy of an entry by one trustee. If such an entry is not sufficient it is because some formal requirement of the law that both trustees must actively participate in the entry stands opposed to the expressed will of the parties involved. We do not believe that this is so. By joining in the instrument the corporate trustee authorized the individual trustee to enter in behalf of the whole estate according to the terms of the instrument. In effect the corporate trustee said to the individual trustee, "If you see fit, you may of your own volition by your separate act without further authority from me enter for yourself and for me." If we could suppose that it would be within the power of the corporate trustee to repudiate this authority at any time, still we do not construe the findings as showing such repudiation. The findings are wholly consistent with complete recognition by the corporate trustee at all times of the power of the individual trustee to foreclose by entry binding upon the whole estate. There is no suggestion that it made any objection. Its attorney took part in the preliminary discussions and helped to prepare the papers. It allowed the individual trustee to remain in possession and to carry on the business of the mortgagor on the mortgaged land in accordance with the provisions of the indenture for three years. The refusal of the corporate trustee itself to enter and to take possession was in no way a repudiation of the authority of the individual trustee to enter in behalf of both, but was consistent with the right reserved to either trustee to decline to take the active part. Under the facts of this case and in so far as affects the technical requirements of foreclosure, the entry of one trustee was by the authority of both. See *Cranston* v. *Crane*, 97 Mass. 459; *Barnes* v. *Boardman*, 149 Mass. 106, 115, 116. There is nothing to the contrary in *Webster* v. *Vandeventer*, 6 Gray, 428, or in *Shepard* v. *Richard-*

*son*, 145 Mass. 32. It does not necessarily follow that the individual trustee was the agent of the corporate trustee in the subsequent management of the company's business.

Because of the alienation of the property before the reassessment the city acquired no lien by the reassessment and so acquired no tax title, and it has become unnecessary to deal with a second issue raised at the trial.

The respondent has both filed a bill of exceptions and appealed from the decision of the Land Court. The only exception shown by the bill of exceptions is to the refusal of a request for a ruling "On all the evidence." Although the facts found by the judge are incorporated in the bill, the evidence is not. We have therefore preferred to deal with the case on the appeal. See *Sheehan Construction Co.* v. *Dudley*, 299 Mass. 48; *Boston* v. *Lynch*, 304 Mass. 272.

The decision is reversed, and a decree is to be entered dismissing the petition. The exceptions are dismissed.

*So ordered.*