**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff–Appellant/Cross–Appellee,**

v.

**Carol LOWERY, Treasurer of Cleveland County, State of Oklahoma; The Board of County Commissioners of Cleveland County, State of Oklahoma; Denise Heavner, County Assessor of Cleveland County, Oklahoma, Defendants–Appellees/Cross–Appellants,**

**Independent School District No. 29; Norman Public School, Amici Curiae.**

**Nos. 92–6333, 92–6336.**

United States Court of Appeals, Tenth Circuit.

Dec. 22, 1993.

Edward J. O'Meara, Counsel, F.D.I.C., Washington, DC (Ann S. DuRoss, Asst. Gen. Counsel and Richard J. Osterman, Jr., Sr. Counsel, F.D.I.C., and Ricky V. Sonders, Edwards, Sonders & Propester, Oklahoma City, OK, with him on the briefs), for plaintiff-appellant/cross-appellee.

Tom A. Lucas, Office of the Dist. Atty., Norman, OK (Reginald D. Gaston, Asst. Dist. Atty., on the briefs), for defendants-appellees/cross-appellants.

Robert L. Pendarvis, Crowe & Dunlevy, Luttrell, Pendarvis & Rawlinson, Norman, OK, for amicus curiae.

Before MOORE, ANDERSON and TACHA, Circuit Judges.

MOORE, Circuit Judge.

These interlocutory appeals raise issues concerning the legal capacity of local authorities to enforce ad valorem taxes assessed against property owned by the Federal Deposit Insurance Corporation. We are also asked to consider whether there is a limitation on the FDIC's statutory right to obtain revaluation of the property.

The district court held under 12 U.S.C. § 1825(b) local authorities could not invoke state enforcement mechanisms to collect taxes from the FDIC without its consent. The court further held although the FDIC could obtain revaluation of property it owned, that authority did not extend to valuations made in years preceding its acquisition of title.

Because of the unassailably clear language of 12 U.S.C. § 1825(b), we conclude the district court correctly interpreted the enforce-

ment powers of local authorities but read into the statute a nonexistent limitation of the FDIC's rights. We therefore affirm in part and reverse in part.

Plaintiff FDIC was appointed receiver for Security National Bank & Trust Company. In its corporate capacity, the FDIC acquired a promissory note made by William and Doris O'Connell payable to Security. Ultimately unable to pay the note, the O'Connells offered the FDIC real estate in satisfaction of the debt.

After the FDIC acquired title, defendant Carol Lowery, Treasurer for Cleveland County, Oklahoma, notified the FDIC the property would be sold at a public auction to satisfy delinquent ad valorem taxes. The O'Connells had failed to pay taxes, interest, and costs for several years. The FDIC objected to the sale pursuant to 12 U.S.C. § 1825 which makes the FDIC's real property amenable to taxation, but limits the taxing authority's enforcement mechanisms. Ms. Lowery refused to stop the sale unless the FDIC satisfied the outstanding obligations. Consequently, the FDIC filed this action for declaratory and injunctive relief against Ms. Lowery, the Board of County Commissioners of Cleveland County, and Denise Heavner, the County Assessor.

Following cross-motions for summary judgment, the district court decided most issues in favor of the FDIC. First, the court found 12 U.S.C. § 1825(b)(2) prohibited the County from selling the FDIC's real property without its consent.[1] Second, the court held section 1825(b)(2) barred the attachment of involuntary liens for unpaid taxes. Third, the court ruled section 1825(b)(3) did not permit taxing authorities to collect any fines or penalties from the FDIC in connection with its real property.[2] Although concluding

section 1825(b)(1) authorized the FDIC to seek revaluation of its property for tax purposes, the court nevertheless denied the FDIC the right to seek revaluation of the property which had been made in years prior to the FDIC's ownership. Following the district court's ruling, the parties appealed under 28 U.S.C. § 1292(b).

The first question before us is whether the district court erred in finding the FDIC's property cannot be sold without its consent. We review the interpretation of a federal statute *de novo. United States v. Walker,* 947 F.2d 1439, 1441 (10th Cir.1991). In its order, the district court held to be dispositive the plain language of 12 U.S.C. § 1825(b)(2), "[n]o property of the Corporation shall be subject to ... sale without the consent of the Corporation."[3] Thus, the court concluded the FDIC's non-consent prohibited the defendants from disposing of the property. *See Irving Indep. School Dist. v. Packard Properties,* 762 F.Supp. 699, 702 n. 10 (N.D.Tex. 1991), *aff'd,* 970 F.2d 58 (5th Cir.1992).

Defendants argue the statute contains an implied exception permitting the sale of the FDIC property when liens attached *prior* to the FDIC's acquisition. This contention is wholly without merit. "As in any case of statutory interpretation, we begin with the plain language of the law." *United States v. Morgan,* 922 F.2d 1495, 1496 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2803, 115 L.Ed.2d 976 (1991). The text of section 1825(b)(2) is unequivocal and suggests no implied exception. Further, the statute provides no involuntary lien may attach to the FDIC's property. If no lien may attach during the FDIC's ownership, the prohibition against foreclosure or sale of the FDIC's property without its consent can only refer to

---

1. The statute states: "No property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation."

2. That provision reads: "The Corporation shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property ... tax ... when due."

3. The district court found the statute applied to the FDIC in its corporate capacity when, as in the instant case, the corporate capacity participates in the liquidation function. Defendants do not appeal this finding. More importantly, we have held in *GWN Petroleum Corp. v. Ok–Tex Oil & Gas,* 998 F.2d 853, 856 (10th Cir.1993), the statute is applicable to the FDIC in both its capacity as receiver and its corporate capacity.

enforcement of liens which attached to the property before the FDIC came into title.[4]

Next, defendants contend the district court erred in holding section 1825(b)(2) shields the FDIC from involuntary liens. Section 1825(b)(2) explicitly states no involuntary lien may attach to the property of the FDIC. For the first time on appeal, defendants argue section 1825(b)(2) irreconcilably conflicts with the mandate of section 1825(a).[5] Once again, because the issue was not raised below, we will not address it. We note, however, section 1825(b)(2) does not excuse payment of tax by the FDIC, it simply denies authorities the ability to lien a FDIC property as a vehicle for collection of delinquent tax.

Defendants urge that we determine whether certain costs or fees are penalties prohibited by the statute. Because the district court did not have an opportunity to rule on the matter, it is improper for us to do so. This cause is interlocutory and defendants may yet raise the issue with the district court.

We turn now to section 1825(b)(1). The FDIC correctly points out section 1825(b)(1) permits it to challenge "an assessment under state law of such property's value." The district court determined the "cited exception applies only to assessments for which the property is liable during the period of the FDIC's ownership," concluding "[t]o hold otherwise would create interminable disruption in the tax rolls of the taxing authority by permitting FDIC to reopen tax rolls for numbers of years prior to the creation of the ownership interest."

We disagree. The plain language of the statute authorizes the FDIC to obtain recalculations of unpaid ad valorem taxes even if the tax liens attached before the FDIC's ownership. Title 12 U.S.C. § 1825(b) states:

> When acting as a receiver, the following provisions shall apply with respect to the Corporation:

> (1) The Corporation ... shall be subject to State ... or local taxation to the same extent according to its value as other real property is taxed, except that, notwithstanding the failure of any person to challenge an assessment under State law of such property's value, such value, and the tax thereon, shall be determined as of the period for which such tax is imposed.

The critical text is the phrase "notwithstanding the failure of **any person** to challenge an assessment under State law of such property's value" (emphasis added). Both sections 1825(b)(1) and (b)(3) employ the term "any person." Indisputably, "any person" in (b)(3) means those others than the FDIC. *See Irving,* 970 F.2d at 61–62 (any person refers to previous owners of FDIC property). Thus, it is logical the term "any person" in (b)(1) be interpreted in the same manner. *See Estate of Cowart v. Nicklos Drilling Co.,* — U.S. —, —, 112 S.Ct. 2589, 2596, 120 L.Ed.2d 379 (1992). We therefore hold the FDIC is permitted to challenge assessments made before its acquisition of title.

In contrast to the district court, we perceive nothing in the plain language of the statute temporally limiting the right of the FDIC to seek and obtain revaluation. The Congress established that right without limitation, and it is improper to judicially ingrain such a restriction on that right.

Accordingly, the judgment of the district court is AFFIRMED IN PART AND REVERSED IN PART and REMANDED.

---

4. Defendants also argue the provision is constitutionally unenforceable under *Louisiana v. Mississippi,* 202 U.S. 1, 26 S.Ct. 408, 50 L.Ed. 913 (1906). Because that argument was not raised in the district court, we decline to consider the issue. *Petrini v. Howard,* 918 F.2d 1482, 1483 n. 4 (10th Cir.1990).

5. Section 1825(a) generally exempts the FDIC from taxation, but provides it will pay certain taxes on its real property holdings.