## S/N–1 REO LIMITED LIABILITY COMPANY, Plaintiff,

### v.

## CITY OF FALL RIVER, Defendant.

### No. CIV. A. 98–10266–PBS.

United States District Court, D. Massachusetts.

Dec. 15, 1999.

**144**

John R. Walkey, Elizabeth K. Ames, Choate, Hall & Stewart, Boston, MA, Edward S. Weil, Schwartz, Cooper, Greenberger & Krauss, Chicago, IL, for Plaintiff.

Thomas F. McGuire, Jr., Corporation Counsel, Fall River, MA, for Defendant.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### *INTRODUCTION*

This is a declaratory judgment action brought by S/N–1 Reo Limited Liability Co. ("S/N–1") challenging the efforts of the City of Fall River to collect real estate taxes on a piece of commercial real estate.[1] S/N–1, which is fifty-one percent owned by the Federal Deposit Insurance Corporation ("FDIC"), derived its interest in the property from a mortgage held by a bank in federal receivership under the FDIC's predecessor, the Resolution Trust Corporation ("RTC") from 1990 to 1995. Fall River assessed real estate taxes on the property, which were secured by liens during the time of federal receivership, and executed a tax taking on December 8, 1993 due to the owner's failure to pay owed taxes. S/N–1 seeks summary judgment on the ground that the tax liens and the tax taking violate the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1825(b).

Fall River has moved to dismiss, arguing that this Court lacks subject matter jurisdiction under the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, because S/N–1 is not a federal instrumentality, but a private party assignee. It also seeks summary judgment on the ground that its tax liens and taking are valid under FIRREA, because they did not extinguish or impair the RTC's interest in the property.

After hearing, the City's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) is ***DENIED***. SN–1's motion for summary judgment is ***ALLOWED*** only to the extent

---

1. The complaint alleges: that the levy of real estate taxes, interest, and penalties for fiscal years 1993—1996 violates 12 U.S.C. § 1825(b)(2) (Count One); that the attachment of involuntary liens to the property for real estate taxes, interest and penalties during these years is void under 12 U.S.C. § 1825(b)(2) (Count Two); that the tax taking in 1993 is an illegal foreclosure (Count Three); that any penalties are void under § 1825(b)(3) (Count IV); and alternatively, that the assessed valuation of the property is excessive under 12 U.S.C. § 1825(b)(1) (Count V).

it seeks a declaration that the tax taking is void; it is **DENIED** to the extent it seeks a declaration that the tax liens are invalid. The City's motion for summary judgment is **ALLOWED** to the extent it seeks a declaration that the tax liens are valid.

## BACKGROUND

### A. Facts

The Court treats the following facts as undisputed, unless otherwise noted.

On or about April 16, 1987, Home Federal Savings Bank ("Home Federal") made a loan of $1,060,000 to William J. Findley, III, Trustee of Findley Realty Trust. The loan was evidenced by a note that was executed by Findley and made payable to Home Federal. The note was secured by a mortgage dated April 16, 1987, made by Findley in favor of Home Federal, encumbering the property at 420 Airport Road, Fall River, a five acre parcel of land improved with two single-story industrial buildings.

Home Federal was one of the savings and loan institutions that became subject to federal intervention in the late 1980's and early 1990's. On or about June 7, 1990, Home Federal was declared by the federal Office of Thrift Supervision ("OTS") to be insolvent, and the OTS appointed the Resolution Trust Corporation ("RTC") as receiver. As receiver of Home Federal, RTC succeeded to all of the rights of Home Federal with respect to the loan. RTC served as receiver of Home Federal from June 7, 1990 to August 22, 1995.

S/N–1 is a limited liability company which is a wholly owned subsidiary of RTC Mortgage Trust 1995–S/N–1 ("RTC Trust"), a Delaware business trust. RTC Trust, in turn, is 51% owned by the Federal Deposit Insurance Corporation ("FDIC"). The FDIC is the successor-in-interest to the RTC, an agency of the United States. Thus, S/N–1 is 51% owned by the FDIC. On August 22, 1995, the RTC transferred and assigned its right, title and interest in the loan to RTC Trust, which in turn assigned it to S/N–1.

Findley defaulted on his obligations to make payments of interest and principal to the RTC. Findley also failed to pay real estate taxes assessed by Fall River against the property for fiscal years ending on June 30 of 1993, 1994, 1995, and 1996.

Fall River assesses real estate taxes at the beginning of the fiscal year, July 1 of each year. By statute, the city has liens for taxes owed it on real property from January 1 of the year of assessment. See Mass. Gen. L. ch. 60, § 37. Taxes were assessed on the property for the fiscal years 1993, 1994, 1995, and 1996 during the period of the RTC's receivership. Due to Findley's failure to pay, tax liens thus arose during the period of RTC's receivership. The amount of real estate taxes for fiscal years 1993 through 1996, including interest and costs, accrued through January of 1999, totals $197,599.10. At no time has the city assessed penalties.

On or about December 8, 1993, Fall River "took" the property by tax deed as a result of Findley's failure to pay real estate taxes for the 1993 fiscal year pursuant to Mass. Gen. L. ch. 60, §§ 53 and 54 (the "tax taking.") Fall River timely registered its tax taking with the Bristol Registry District of the Land Court on January 27, 1994. Fall River neither sought nor obtained the consent of the RTC prior to its tax taking. Fall River has not sought to foreclose the statutory right of redemption pursuant to Mass. Gen. L. ch. 60, § 65.

In November of 1995, RTC Trust filed a complaint to foreclose the mortgage against Findley in the Massachusetts Land Court. Judgment was granted in RTC Trust's favor, a foreclosure sale occurred, and a foreclosure deed was issued by RTC Trust in favor of S/N–1 on or about October 3, 1996.

## DISCUSSION

### A. The Tax Injunction Act (TIA)

██ Defendant Fall River asserts that this court lacks subject matter juris-

diction under the Tax Injunction Act, 28 U.S.C. § 1341, which states, "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." The Tax Injunction Act applies not only to actions to "enjoin, suspend, or restrain" state taxation, but also to declaratory judgment actions such as the instant case. *See California v. Grace Brethren Church*, 457 U.S. 393, 408, 102 S.Ct. 2498, 2507, 73 L.Ed.2d 93 (1982). Because Congress's intent in enacting the TIA was to "prevent federal-court interference with the assessment and collection of state taxes," district courts are without jurisdiction to issue declaratory judgments invalidating state taxes unless no "plain, speedy and efficient remedy" exists in state courts. *Id.* at 411, 102 S.Ct. 2498; *see also* 28 U.S.C. § 1341; *Bank of New England Old Colony, N.A. v. Clark*, 986 F.2d 600, 602 (1st Cir.1993) (holding that the TIA negates federal jurisdiction).

Plaintiff does not claim that remedies under state law would be inadequate under the "plain, speedy, and efficient" exception to the TIA. *See Ludwin v. City of Cambridge*, 592 F.2d 606, 609 (1st Cir.1979) (holding that the remedies available under Massachusetts law to challenge tax assessments were sufficient to preclude federal declaratory action). Plaintiff also does not contest that its claims are of the type barred by the TIA. Rather, plaintiff argues that S/N-1, as a corporation majority-owned by the FDIC, and as the assignee of the rights to a mortgage held by the RTC in its capacity as receiver, qualifies for the judicially created "federal instrumentality" exception to the TIA. This argument presents an interesting and complicated question.

The Supreme Court has created an exception to the TIA where the federal government brings suit "to protect itself and its instrumentalities from unconstitutional state exactions." *Department of Employment v. United States*, 385 U.S. 355, 358,

87 S.Ct. 464, 466–67, 17 L.Ed.2d 414 (1966). In cases such as this one, where the United States is not suing as a co-plaintiff, courts have struggled with the proper bounds of "federal instrumentality" status. In *Arkansas v. Farm Credit Services of Cent. Ark.*, the Supreme Court held that federally-chartered production credit associations ("PCA's") could not assert the federal instrumentality exception. 520 U.S. 821, 831, 117 S.Ct. 1776, 1782, 138 L.Ed.2d 34 (1997). The Court stated, "[T]he mere fact that a party challenging a tax has interests closely related to those of the Federal Government is not enough ... to avoid the bar of the Act." *Id.* at 828, 117 S.Ct. 1776 (citing *Moe v. Confederated Salish and Kootenai Tribes*, 425 U.S. 463, 471–72, 96 S.Ct. 1634, 1640, 48 L.Ed.2d 96 (1976)). The Court reasoned that since the PCA's business was making commercial loans, and their stock was owned completely by private entities, "[t]heir interests are not coterminous with those of the Government any more than most commercial interests." *Id.* at 831, 117 S.Ct. 1776.

The First Circuit has adopted a flexible standard for determining "federal instrumentality" status. "[E]ach instrumentality must be examined in light of its governmental role and the wishes of Congress as expressed in relevant legislation." *Federal Reserve Bank of Boston v. Commissioner of Corporations and Taxation of Com. of Mass.*, 499 F.2d 60, 64 (1st Cir.1974). The court in *Federal Reserve* concluded that Federal Reserve banks, unlike private corporations, were "plainly and predominantly fiscal arms of the government" with interests "indistinguishable from those of the sovereign". *Id.* at 62.

Plaintiff contends that, as the assignee of the rights of the RTC, and as a majority-controlled entity of the FDIC, it can assert the federal instrumentality exception to the TIA. Several courts have addressed the status of the RTC (and its successor, the FDIC) in its role as receiver for failed banks, and drawn varying conclusions. In *Bank of New England*, 986

F.2d at 602–03, the First Circuit denied federal instrumentality status to the FDIC. In that case, Rhode Island taxed a private bank prior to the FDIC being appointed receiver. The FDIC later brought a suit in federal court which involved solely state tax issues. Eschewing a "bright line" rule for whether a particular agency is entitled to claim the exception, the court found it lacked jurisdiction under the TIA. *Id.* The court reasoned:

> The FDIC's governmental role in this case is minimal. Rhode Island taxed a private bank, not the federal government. The FDIC only became involved when the bank was declared insolvent . . . No issues of intergovernmental tax immunity exist in the case. Furthermore, if successful, benefits from the refund claim will flow principally to the bank's creditors, not to the federal treasury.

*Id.* at 603; *see also FDIC v. New York*, 928 F.2d 56, 59–60 (2d Cir.1991) (avoiding the issue of whether the FDIC was federal instrumentality, but finding no exception to the TIA where the FDIC, acting as an assignee, not as a receiver, sought to protect private commercial interests of a failed bank's claim for refund of state excise taxes because there was a *"de minimus* effect on the federal government").

Plaintiff asserts that this case is distinguishable from *Bank of New England* and *New York* because here the RTC was acting as receiver at the time the state tax liens arose and the tax taking was executed. In *Simon v. Cebrick*, 53 F.3d 17, 23 (3d Cir.1995), the FDIC sought the protections of FIRREA to prevent its assets from foreclosure while it acted as receiver. Distinguishing *Bank of New England*, the court found that "[T]he FDIC is acting in a governmental capacity when it winds up the affairs of failed banking institutions pursuant to FIRREA." *Id.; see also FDIC v. City of New Iberia*, 921 F.2d 610, 613 (5th Cir.1991) ("That FDIC and FSLIC are federal agencies exempt from [TIA] can hardly be doubted").

■ I agree with Plaintiff that this is a stronger case than *Bank of New England* for permitting federal jurisdiction under the federal instrumentality exception. Here, the RTC was not acting principally for the benefit of a private entity, but rather was acting in a governmental role to wrap up the affairs of Home Federal. *See Federal Reserve*, 499 F.2d at 64; *Simon*, 53 F.3d at 23. Moreover, section 1825(b)(2) expresses the intent of Congress to protect property subject to the RTC's receivership from involuntary liens and foreclosure. *See* 12 U.S.C. § 1825(b)(2). In contrast to the purely state law issues at stake in *Bank of New England*, this case raises important issues of intergovernmental tax immunity. *See Bank of New England*, 986 F.2d at 602 n. 4.; *see also Federal Reserve*, 499 F.2d at 64 (emphasizing the federal nature of question being litigated).

Defendant asserts that, even if the RTC/FDIC itself could have brought suit in federal court, SN–1 is a private assignee of the RTC's rights and interests, and does not inherit its federal instrumentality status. The Seventh Circuit, struggling with the interplay between FIRREA and the TIA, concluded that the TIA precluded federal jurisdiction over claims brought not by the RTC or a successor of the federal agency, but by a private party assignee of the federal government. *See RTC Commercial Assets Trust v. Phoenix Bond & Indem. Co.*, 169 F.3d 448, 452 (7th Cir.1999) (holding that assignee of RTC could not assert exemption from TIA); *see also North Georgia Elec. Membership Corp. v. City of Calhoun*, 820 F.Supp. 1403, 1408 (N.D.Ga.1992) (finding that franchises of Tennessee Valley Authority did not qualify for exception to the TIA).

Here, plaintiff S/N–1 is not a purely private assignee, but rather is 51% owned by the FDIC. Plaintiff therefore relies not only on its status as assignee, but also its status as a federally-controlled corporation whose financial well-being can fairly be said to impact the federal fisc. A brief

discussion on the plaintiff's structure, and its relationship to the federal government, is enlightening here. As explained by plaintiff's counsel at oral argument, S/N–1 is an entity born of the RTC's attempts to sell off delinquent commercial real estate loans that were held by failed savings and loan institutions. While the government wished to sell off these loans in bulk, it also maintained a controlling interest in the purchasing entities (such as plaintiff) in the hope that, if the market recovered, the government could capture some of the up-side.

Fall River argues that since it taxed a private party (Findley) from 1993 to 1996, the federal government's interests are too remote to warrant the federal instrumentality exception. But the government's property interest is far more direct here than in *Bank of New England* and *New York*. Upon being appointed receiver in 1990, the RTC "step[ped] into the shoes of" Home Federal and inherited all of its rights and obligations under the mortgage. *See* 12 U.S.C. § 1821(d)(2)(A)(i); *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86, 114 S.Ct. 2048, 2054, 129 L.Ed.2d 67 (1994). When Fall River's liens attached, the government's interests in the property were implicated, and are still implicated. In these circumstances, one other court concluded that SN–1 merited federal instrumentality status. *See S/N–1 REO Ltd. Liab. Co. v. City of New London*, No. 3–96–CV–01601, slip op. at 7–8 (D.Conn. Feb. 11, 1999).

This is a close case in a turgid area of the law. Granting federal instrumentality status to the plaintiff results in a benefit for the private owners of the other 49% of S/N–1, whose interests are certainly not coterminous with those of the government. But while some benefits may flow to private investors, the (bare) majority of benefits will inure to the federal treasury. This Court concludes that here the FDIC is, in an entrepreneurial way, advancing governmental interests via a corporate form, S/N–1, in a claim invoking the provi-

sions of FIRREA which shield property in federal receivership. On these facts, plaintiff is not too remote from the United States to qualify for the "federal instrumentality" exception to the TIA, and the motion to dismiss for lack of subject matter jurisdiction is *DENIED*.

### B. *Federal Law*

The heart of this dispute stems from § 1825(b) of FIRREA, which reads:

When acting as a receiver, the following provisions shall apply with respect to the Corporation:

(1) The Corporation including its franchise, its capital, reserves, and surplus, and its income, shall be exempt from all taxation imposed by any State, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed, except that, notwithstanding the failure of any person to challenge an assessment under State law of such property's value, such value, and the tax thereon, shall be determined as of the period for which such tax is imposed.

(2) No property of the Corporation shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of the Corporation, nor shall any involuntary lien attach to the property of the Corporation.

(3) The Corporation shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due.

### C. *State Law*

In order to evaluate the applicability of section 1825 of FIRREA, an understanding of the state laws governing the collection of delinquent real estate tax-

es is essential. Under Massachusetts law, a city has a lien for the real estate taxes due it on each parcel of real estate located in the city. *See* Mass. Gen. L. ch. 60, § 37. This lien arises by statute on January 1 of each year for the fiscal year beginning on the following July 1. *See id.; see generally* 28 Arthur L. Eno, Jr. & William V. Hovey, *Massachusetts Practice,* Real Estate Law, § 11.2 (1995 and Supp.1998). The lien continues as long as the assessed owner continues to own the premises, but it terminates on October 1 of the third year [2] after the assessment if there has been an intervening "alienation of" the property. *Id.* A foreclosure of a mortgage by sale is such an alienation. *See Worcester v. Bennett,* 310 Mass. 400, 404, 38 N.E.2d 647 (1941). A tax lien is superior to any other lien, including prior mortgages. *See Mechanics Savings Bank v. Kennedy,* 299 Mass. 404, 409, 12 N.E.2d 852 (1938).

If taxes are unpaid for fourteen days after demand, they may be "levied by sale or taking of the real estate." Mass. Gen. L. ch. 60, §§ 37, 54. Once an instrument of taking is recorded, title vests in the town subject to the right of redemption. *See id.* § 54. At any time after six months from the date of a tax sale or taking, the holder may file a petition in the land court to foreclose all rights of redemption. *See id.* § 65. Once real estate has been taken for payment of taxes, it is unnecessary for the town to take the property for taxes subsequently assessed; payment of the subsequent taxes and charges becomes part of the terms of redemption. *See id.* § 61.

Under Massachusetts law, tax sales and takings result in a lien on the property that has to be foreclosed by a municipality in order for the municipality to perfect title. *See* Eno & Hovey, at § 12.11. There is no time limit to the duration of a municipality's tax title, but until the right of redemption is foreclosed, a municipality can recover only the taxes due it, plus interest, costs and attorneys fees. *See id.; Lynnfield v. Owners Unknown,* 397 Mass. 470, 474, 492 N.E.2d 86 (1986). Until redemption, or until the right of redemption is foreclosed, a tax title is merely a lien on a property serving as security for the payment of the amount of a tax and charges. *See* Mass. Gen. L. ch. 60, § 54; *Jenney v. Tilden,* 270 Mass. 92, 94, 169 N.E. 669 (1930). Any person having an interest in a property taken or sold for nonpayment of taxes may redeem it by paying all taxes due, plus interest and other charges, at any time prior to the filing of a petition for foreclosure. *See* Mass. Gen. L. ch. 60, § 62.

### D. The Interplay Between State and Federal Law

Plaintiff argues that the tax liens and tax taking under Massachusetts law are invalid under § 1825(b)(2) of FIRREA. An analysis of this question begins with *City of New Brunswick v. United States,* 276 U.S. 547, 555–56, 48 S.Ct. 371, 372–73, 72 L.Ed. 693 (1928), where the Supreme Court addressed the rights of a federal corporation which held a security interest in property subject to local taxation. The Court held that even where a federal instrumentality retains a mortgage interest in property, a city may (if state law permits) assess taxes against the owner upon the entire value of the property and enforce collection by sale of the owner's interest in the property. *See id.* The Court cautioned, however, that a city is "without authority to enforce the collection of taxes thus assessed so as to destroy the preexisting federal lien." *Id.* at 556, 48 S.Ct. 371. To preserve the "paramount right of the United States," and to "meet the equities of the case" as between the city and the federal government, the Court held that a city should be enjoined from selling lots for the collection of taxes unless all

---

**2.** The duration of the lien has recently been extended to three years and six months from the end of the fiscal year for which the tax·

was assessed. *See* Mass. Gen. L. ch. 60, § 37, *amended by* St.1996, c. 375, § 2 (Supp.1999).

interests held by the federal instrumentality are "expressly excluded from such sales, and they are made by express terms, subject to all such prior rights, liens and interests." *Id.*

After *New Brunswick,* courts have treated an exercise of state power over a mortgage interest held by a federal instrumentality as an exercise of state power over property of the United States. *See Rust v. Johnson,* 597 F.2d 174, 177 (9th Cir.1979) ("No basis in law exists for treating mortgage interests of federal instrumentalities differently from other property of the United States.").

Section 1825(b)(2) of FIRREA incorporates the principles laid out in *New Brunswick.* The statute "represents the express will of Congress that the FDIC must consent to any deprivation of property initiated by a state." *FDIC v. Lee,* 130 F.3d 1139, 1143 (5th Cir.1997); *Trembling Prairie Land Co. v. Verspoor,* 145 F.3d 686, 691 (5th Cir.1998). A lien held by the FDIC as mortgagee is "property" within the meaning of § 1825(b)(2). *See Lee,* 130 F.3d at 1143; *Matagorda County v. Russell Law,* 19 F.3d 215, 222 (5th Cir.1994) (holding that federal law governs the definition of property, which embraces both fee and lien interests); *Simon,* 53 F.3d at 21 (same).

In determining what actions by a state constitute a "deprivation," under § 1825, the touchstone is whether a taxing entity's action causes a "reduction in the value of the receivership's assets." *Irving Independent School Dist. v. Packard Properties,* 970 F.2d 58, 62 (5th Cir.1992). "Absent some actual devaluation of, or loss of rights in, FDIC 'property,' there is no 'deprivation of property' and § 1825(b)(2) is not violated ...." *First State Bank–Keene v. Metroplex Petroleum, Inc.,* 155 F.3d 732, 739 (5th Cir.1998) (holding that a tax sale did not violate § 1825(b)(2) where under Texas law the FDIC's interest was

not devalued or extinguished since it had not been made a party to the suit); *see also Verspoor,* 145 F.3d at 690–91 (finding that petition to quiet title deprived the FDIC of its property interests and was the "functional equivalent" of foreclosure proceedings barred by § 1825(b)(2)); *Lee,* 130 F.3d at 1143 (holding that a lien cannot be extinguished through a tax sale without the consent of the FDIC); *Matagorda County,* 19 F.3d at 222–23 (holding that a tax lien cannot be foreclosed so as to extinguish the FDIC's interest in the property unless the FDIC consents).

Plaintiff claims that the tax liens which arose pursuant to Mass. Gen. L. ch. 60, § 37 violate 12 U.S.C. § 1825(b)(2), which provides that no involuntary lien shall attach to the property of the FDIC. The statute "denies authorities the ability to lien a FDIC property as a vehicle for collection for delinquent tax." *FDIC v. Lowery,* 12 F.3d 995, 997 (10th Cir.1993) (holding that no tax liens may attach to property after the FDIC acquired title).

The sticky issue here is that the FDIC has not acquired title to the property, as it had in *Lowery,* but has a mortgage interest in it. Under Massachusetts law, an inchoate tax lien arises by statute, which recognizes it is "subject ... to any lawful action under any paramount authority conferred by the constitution or law of the United States." Mass. Gen. L. ch. 60, § 37. Because the tax lien is made expressly subject to federal law, it cannot be said to be an involuntary lien attaching to the FDIC's property interest created by the mortgage. *But cf. Old Bridge Owners Coop. Corp. v. Township of Old Bridge,* 914 F.Supp. 1059, 1064 (D.N.J.1996) (holding under New Jersey law that tax lien is choate and cannot arise on property subject to mortgage of RTC).

Indeed, in its own tax policy and memorandum [3] and in other reported cases the

---

**3.** The FDIC has issued an FDIC and RTC Joint Tax Policy, and an accompanying Legal

Memorandum.
The Joint Tax Policy states in relevant part:

FDIC has not even contested the validity or priority of similar tax liens for failure to pay taxes. *See e.g., Matagorda County,* 19 F.3d at 222. Rather, as the court said in *Matagorda,* for purposes of the prohibition contained in the statute, "it does not matter where the lien came into existence"; the significant date is the "attempted enforcement" of the lien. *Id.*[4]

Plaintiff's stronger argument is that the tax taking violates § 1825(b)(2)'s requirement that "No property of the Corporation shall be subject to ... foreclosure, or sale without the consent of the Corporation." Fall River claims that there is no deprivation of property because (1) it did not complete foreclosure proceedings to extinguish any right of redemption; and (2) even if its tax title is allowed to take priority over the plaintiff's mortgage, there are no facts indicating that the value of the property is insufficient to satisfy both liens.

■■■■ Fall River's arguments fail. Even though the right of redemption has not been foreclosed, the tax taking precludes a right of redemption unless SN–1 pays back taxes, interest and charges, and permits Fall River to foreclose unless such payment is made. Therefore, SN–1 cannot benefit from its mortgage foreclosure deed without making these back payments. As a practical matter, Fall River cannot perfect its deed on the property while preserving the FDIC's property interest because the value of the property is less than the sum of Fall River's tax liens and the FDIC lien. The outstanding mortgage held by S/N–1 at the time it foreclosed was $605,000. Fall River's outstanding liens for taxes and interest totaled approximately $190,000 as of January of 1999. Under the City Assessor's most recent valuation of the property in January of 1998, the value of the property is $642,000; therefore, any attempt by Fall River to foreclose on its tax liens will impair the value Plaintiff would receive through a foreclosure of *its* lien. *See Matagorda,* 19 F.3d at 225 n. 11 (noting that with insufficient value in the property to satisfy both liens, allowing state to foreclose if they "preserve" the FDIC's lien is "not a realistic solution"); *but see Donna Indep. School Dist. v. Balli,* 21 F.3d 100, 101 (5th Cir. 1994) (finding sufficient equity to permit a tax sale where the property value was $529,578, the delinquent taxes were $73,-488.83, and the outstanding value of the FDIC's interest was $196,689.73). Under the circumstances of this case,[5] the tax

D. Tax liens.
FORECLOSURE. No property of the Corporation is subject to levy, attachment, garnishment, foreclosure or sale without the Corporation's consent. Furthermore, a lien for taxes and interest may attach, but the Corporation will not permit a lien or security interest held by it to be eliminated by foreclosure without the corporation's consent.
The Legal Memorandum states in relevant part:
D. TAX LIENS.
2. *Attachment.* Section 15(b)(2) of the FDIA, 12 U.S.C. § 1825(b)(2) provides that no involuntary lien shall attach to the property of the Corporation. One example of an involuntary lien is a lien that automatically attaches for delinquent taxes ... Although in most states, a real estate mortgage interest represents an interest in the real property, it is not tantamount to ownership of the property itself. Because the involuntary lien for delinquent real property taxes attaches to the property itself, non-consensual liens purporting to attach to property owned in fee by a Corporation are considered void, but liens may attach to property in which a Corporation holds only a mortgage interest as security for a loan.

4. Some courts have declined to consider this extraneous interpretation in situations where congressional intent in § 1825 is clear and unambiguous. *See Matagorda County,* 19 F.3d at 220; *Simon,* 53 F.3d at 22. With respect to tax liens, which arise on property in which the RTC has a mortgage but not an ownership interest in the property, the issue is not so clear-cut.

5. The Property's value should be determined as of the time the Court determines the federal lien takes priority—i.e., the present time. *See Matagorda,* 19 F.3d at 225, n. 11 (looking to property's value as of the time of the district court's judgment in assessing whether

taking creates a deprivation of property, without the consent of the FDIC, in violation of § 1825(b)(2).

## ORDER

The Court *ALLOWS* the plaintiff's motion for summary judgment on Count Three that the tax taking violates 12 U.S.C. § 1825(b)(2), but *DENIES* the motion to the extent that it seeks a declaration that the tax liens are invalid. The Court *DENIES* the defendant's motion to dismiss for lack of subject matter jurisdiction; but *ALLOWS* the defendant's motion for summary judgment to the extent it seeks a declaration that the tax liens are valid.

federal lien could be preserved). At oral argument, attorneys for both parties requested and received additional time to submit affidavits and conduct discovery as to the property's current value. Plaintiff submitted the affidavit of its agent who marketed the Property for sale over the past two years, indicating that the highest offer received to date has been $400,000. Defendant submits the affidavit of the City Assessor of Fall River, stating that the fair market value of the Property, both at the time receivership terminated, and at the time of the foreclosure sale in 1996, was $870,200. The City Assessor's most recent valuation of the Property was done in January of 1998, at which time he valued the Property at $642,000. Because even under the city's most recent assessment, the current value of the Property will not be sufficient to cover both sets of interests, the tax taking is void.